UNITED STATES, Appellee

v

THOMAS M. LONG, Private, U. S. Army, Appellant

17 USCMA 323, 38 CMR 121

No. 20,329

December 15, 1967

*Captain John F. Morrow* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Major David J. Passamaneck, Captain Kenneth J. Stuart,* and *Captain Gerald F. Richman.*

*Captain David E. Wilson* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major John F. Webb, Jr.*

## Opinion of the Court

QUINN, Chief Judge:

In October 1966, a general court-martial at Fort Gordon, Georgia, convicted the accused of lifting a weapon against his commanding officer and of assault upon a superior noncommissioned officer, in violation of Articles 90 and 91, Uniform Code of Military Justice, 10 USC §§ 890, 891, respectively. It sentenced him to a dishonorable discharge, confinement at hard labor for five years, and accessory penalties. A board of review affirmed the findings of guilty, but reduced the period of confinement to three years. On this appeal, the accused contends he was prejudiced by argument of trial counsel in regard to the sentence.

The offenses of which the accused was convicted authorized a sentence extending to a dishonorable discharge and confinement at hard labor for eleven years. Manual for Courts-

324

Martial, United States, 1951, Table of Maximum Punishments, paragraph 127c, pages 220–221. The events which led to the offenses started with an order to the accused to report to the orderly room. The order was given personally to the accused by Sergeant W. H. Hickerson. The accused proceeded toward the orderly room, but then changed his route and went to his barracks. Shortly thereafter, Sergeant Hickerson saw the accused in the barracks. He again ordered the accused to go to the orderly room, and told him that either he proceeded under his "own power" or he would be taken "by force." According to his own testimony, the accused concluded Hickerson was going to "double bank" or "gang up" on him with another sergeant. He pulled a knife from his pocket, seized Hickerson by the shirt, and placed the knife near his chest. He said: "I've been double-banked all my life, . . . you're not going to double bank me any more." A "large crowd" was attracted to the barracks. In turn, the crowd attracted the attention of the commanding officer, Captain M. P. Wagner. On learning the reason for the gathering, Captain Wagner immediately entered the barracks. Inside, he engaged the accused in conversation in an effort to persuade him to release Hickerson. At one point in their talk, the accused moved his hand which held the knife toward Captain Wagner. The Captain parried the movement with his left wrist. Eventually, military policemen disarmed the accused and took him into custody.

Several witnesses testified that the accused gave indications he had been drinking, but he was not drunk. Also, while he was in a "highly excited" state and appeared to be "emotionally upset," he seemed to be oriented to the "situation" and to know "what he was doing." He addressed the commanding officer as "Captain" and "Sir." In his own testimony the accused denied an intent to hurt anyone, and attributed his conduct to fear of being double-banked.

During the sentence proceedings, the accused testified in his own behalf. He said he was "sorry about what happened," and wanted very much "to go back to duty." He indicated that neither in the civilian community nor in the military had he ever before been convicted of an offense; and he had never received Article 15 punishment. A former civilian employer stated that the accused had been the "hardest worker" he had ever had in his employ, and he never found him to be "dishonest or out of the way one bit." Captain Wagner testified the accused was "a good soldier," and he would "accept him" back in his command, but "not at Fort Gordon because of the training situation, and also because there are still people around that know about this incident." The data on the charge sheet, which was admitted in evidence, showed the accused entered the service on May 19, 1966, and had no previous convictions.

Trial counsel urged the court-martial to impose "a severe maximum punishment." His opening argument was largely a repetitive exposition of the "very aggravating circumstances" of the offenses. He perceived aggravation in the accused's act of holding at knife point "high commissioned officers, non-commissioned officers, and military policemen" for the "very extended period of time" of two hours. Perhaps, it is more logical to view this evidence as mitigation, rather than aggravation, because it suggests that if these high-ranking persons had been better able to cope with an emotional private, the matter might have retained its original minor proportions. See United States v Cave, 17 USCMA 153, 37 CMR 417. Be that as it may, trial counsel can argue his interpretation of the evidence; the interpretation he advanced was not so foreign to the facts as to constitute mere conjecture or fancy. United States v Hutton, 14 USCMA 366, 370, 34 CMR 146. These comments are not censurable.

Other parts of trial counsel's argument, challenged by the accused as inflammatory and unsupported by the evidence, require more extensive dis-

cussion. The portions underscored by the defense are as follows:

"TC: . . . He's not a young man . . . older than the average draftee, which he is, he didn't just come into the service, he had completed basic combat training, he was now into advanced training, and curiously enough, he well understood that when that training was completed he would be getting orders—permanent change of station orders. . . .

. . . . . .

"TC: The government has a further comment to make on the sentence. These comments are made by me because of how I feel about this offense, and I—

"DC: Sir, I'll have to object. I don't care—we don't care how he personally feels—

"LO: Counsel will state—

"TC:—I want to make further comments because the offense that you have convicted Private Long of, is the type that serious deliberation must be given before punishment is adjudged. . . . The special circumstances surrounding the facts in this case are the type circumstances which warrant a severe maximum punishment authorized in this case for these offenses. Where could such conduct be more detrimental to the military establishment than at a training center, except for possibly in a combat zone?

"Private Long as unworthy of belief as he is, wants to tell you that he wants to remain in the service. His actions and his attitude on the 1st of September show—speak much more loudly and convincingly than does what he tells us here in court. I'm not saying that a man his age, under the circumstances as we have in this case, should feel the full force of the law by way of punishment. But the government does contend that the attitude in this country today is too prevalent, that 'I will tell the military to go to hell when I get there, and spend my time in Leavenworth.' I submit that is

what Private Long did on the 1st of September. He wanted, and he felt like he could tell the military to go to hell, and spend the rest of his time in Leavenworth. Well, the remaining part of his tour is not enough, not nearly enough. . . .

"DC: I have to take exception to the—because of the trial counsel's remark. He implied that the facts in this case show that the accused, Private Long, had an attitude towards the military—to go to hell. I say that's entirely unfounded by the evidence. You may have found against him that he did not act in self-defense—

"LO: All right. What else? Trial counsel has closing argument, defense counsel. You have a new matter?

"DC: No, sir.

"LO: Do you have any other matter to bring up?

"DC: No, sir."

Counsel's personal opinion, predicated upon matters other than those in evidence, should not be injected into the case. United States v Hurt, 9 USCMA 735, 781–782, 27 CMR 3; United States v White, 324 F2d 814, 816 (CA2d Cir) (1963); United States v DeAlesandro, 361 F2d 694 (CA2d Cir) (1966). It was, therefore, proper for defense counsel to object to trial counsel's attempt to present his personal feelings about the offenses of which the accused was convicted. Although there was no ruling, the objection itself served to keep trial counsel from stating his personal feeling. All his remarks after the objection were based on the "type" of offense and the "type" of "circumstances" presented in the case. The former justified "serious deliberation," and the latter warranted "a severe maximum punishment." We see no fair risk of harm to the accused as a result of trial counsel's statement about "how I feel about this offense."

Argument must be based upon matters in evidence. United States v

Gerlach, 16 USCMA 383, 37 CMR 3; United States v Johnson, 12 USCMA 602, 31 CMR 188. However, comment on facts of contemporary history is permissible, although evidence of them has not been formally admitted. United States v Licht, 158 F2d 458, 460–461 (CA2d Cir) (1946), certiorari denied, 330 US 824, 91 L ed 1274, 67 S Ct 863. Similarly permissible are comments on matters of common knowledge within the community. United States v Jones, 2 USCMA 80, 87, 6 CMR 80. Tested by these rules, some of the factual references by trial counsel were plainly allowable. For example, trial counsel's description of the accused as a draftee was probably obvious to the court members from the fact that the accused's service number begins with the letters "US"; also, trial counsel's remark that the accused was subject to permanent change of station orders was justified on the assumption that persons on duty with the school and training center at Fort Gordon, as were the court members, would know that student soldiers like the accused would be transferred on completion of their school course. United States v Jones, supra. Appellate defense counsel, however, rely on other rules which restrict the range of argument, and which they contend were violated.

An appeal to passion or prejudice is wholly improper. Viereck v United States, 318 US 236, 87 L ed 734, 63 S Ct 561 (1943). It is also improper to associate the accused with other offensive conduct or persons, without justification of evidence in the record. Handford v United States, 249 F2d 295, 298 (CA5th Cir) (1957); United States v Socony-Vacuum Oil Co., 310 US 150, 84 L ed 1129, 60 S Ct 811 (1940). Focusing on these prohibitions, appellate defense counsel combine parts of trial counsel's argument into a mosaic of inflammatory and unsupported insinuations. They see trial counsel's portrait of the accused as that of a person who successfully resisted the draft for a substantial period, and when finally called into the service, reported with the determination that at an appropriate time he would "tell the military to go to hell." That time arrived when the accused knew he was "getting orders—permanent change of station orders." Strangely, the mosaic does not indicate that the permanent change of station was duty in Vietnam; and, further, that the attitude of those dedicated to telling the military to "go to hell" included a preference for prison to duty in Vietnam. Perhaps, appellate defense counsel have not etched those lines in the picture because defense counsel at trial did not specifically object to this aspect of trial counsel's argument. See United States v Sims, 5 USCMA 115, 17 CMR 115. Whatever the reason, trial counsel's argument clearly contemplated a choice, not between military service as such and Leavenworth prison, but between Leavenworth and military service in Vietnam. We view the argument, therefore, as including the specter of Vietnam. We are also willing to conclude, with both appellate defense counsel here and the law officer at trial, that trial counsel's argument did not constitute fair comment on the accused's motivation in committing the offenses. We cannot, however, accept the accused's claim of prejudice. On the contrary, we consider the action taken by the law officer sufficient to correct the effect of trial counsel's violation of the rules of fair comment.

The law officer concluded he could eliminate all risk of prejudice by specific instructions to the court members to disregard trial counsel's comments. Instructions to disregard are indeed effective means to dispel the influence of improper argument by the prosecuting attorney. United States v O'Neal, 16 USCMA 33, 39, 36 CMR 189; Az Din v United States, 232 F2d 283 (CA9th Cir) (1956), certiorari denied, 352 US 827, 1 L ed 2d 49, 77 S Ct 39 (1956); United States v Antonelli Fireworks Co., 155 F2d 631, 637–638 (CA2d Cir) (1946), certiorari denied, 329 US 742, 91 L ed 640, 67 S Ct 49 (1946). Here, the law officer instructed the court members in great

detail as to their discretion in choosing an appropriate punishment within the limits of the legal maximum. He reviewed the various factors of mitigation and aggravation that could properly be considered by them. His final instructions in this area were as follows:

". . . In considering the factors that you weigh in adjudging the sentence, gentlemen, you are limited to the evidence relating to the offenses charged. You're not to consider acts of misconduct that are not charged in this case. The instructions I previously gave you during the case in chief, to disregard these acts of misconduct not charged, apply with equal force at this time. I wish to add a comment —trial counsel's comment on the accused's motive for committing these offenses. You are instructed in this respect that the accused is not charged with any intentional invasion [sic] of foreign service, and it will not be considered as a matter in any way by the court."

The instructions were directed to the precise point of trial counsel's improper argument which █ might possibly prejudice the court members against the accused. They were explicit in condemning the argument as irrelevant to the sentence, and equally explicit in forbidding the court members to consider it. In our opinion, they effectively smothered the fire of trial counsel's insinuations, and made the declaration of a mistrial unnecessary. United States v O'Neal, supra; United States v Antonelli Fireworks Co., supra.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):
I dissent.

The essence of the principal opinion is that, though trial counsel's argument was an ill-advised and erroneous appeal to the passions of the court, made up of inflammatory and unsupported insinuations, it was wiped from the members' minds and rendered totally ineffective by the law officer's admonition to disregard evidence of offenses not charged, particularly "trial counsel's comment on the accused's motive for committing these offenses." In light of the argument, the law officer's advice was about as effective as King Canute's command that the tides recede, and I would remand the case for further curative action on the sentence.

From the outset of his peroration, it is obvious the trial counsel intended to depart completely from the facts of the case and rely on appealing to the prejudices of the court in the hopes of securing "a severe maximum punishment." Though the accused was but a twenty-year-old youth, counsel declared, "He's not a young man . . . older than the average draftee, which he is," thereby implying at once that, for some nefarious reason, the accused had delayed entering the service of his country. But there is not the slightest basis in the record for such an inference. To the contrary, Long appears to have been a hard-working young man, who had never before been entangled with the law either in civilian life or in the military. And if, as trial counsel states, a twenty-year-old is "not a young man," then the laws both of nature and man have indeed changed.

Having argued thusly, and listened to the sober and detailed answer of defense counsel in reply, trial counsel immediately disclosed his true purpose in rebuttal. Thus, he prefaced his remarks with the notation that they were made "because of how I feel about this offense." Over objection, he was allowed to continue his diatribe unabated. He clearly implied that the accused, having completed his training, was attempting to avoid overseas orders by committing criminal offenses, despite the fact that previous cross-examination had revealed Long had not received any orders at all and that the entire incident arose out of nothing more than the mishandling of an individual in a highly emotional and intoxicated state.

328

Finally, he appealed outright to the prejudices of the court members:

". . . But the government does contend that *the attitude in this country today is too prevalent, that 'I will tell the military to go to hell when I get there, and spend my time in Leavenworth.' I submit that is what Private Long did on the 1st of September. He wanted, and he felt like he could tell the military to go to hell, and spend the rest of his time in Leavenworth.* . . . The purpose of punishment in this case goes further than just to see that Private Long doesn't go bad again, it goes much further than that." [Emphasis supplied.]

A prosecutor is entitled to strike hard blows for the Government, but the nature of our system demands they be fair. United States v Doctor, 7 USCMA 126, 21 CMR 252. They must, above all, be based on the evidence or inferences to be drawn therefrom. United States v Hutton, 14 USCMA 366, 34 CMR 146. And, as has been noted above as well as in the principal opinion, trial counsel's assertions had not the slightest foundation in the record. In lieu of facts, he sought refuge in inflaming the court; in lieu of evidence, he painted the previously blameless accused in the colors of an agitator—a "hippie" opponent to the military who sought to evade the draft and, when called to the colors, determined to sit out the dangers of combat in the relative security of a military prison.

The members of our armed forces, both officers and men, are, with few exceptions, dedicated public servants. The history of our country is almost unique in its freedom from military rebellion and the attachment of its soldiery to constitutional principles of government. Patriotic by inclination and tradition, they have steadfastly turned the other cheek to insult and obloquy heaped upon them by a vocal minority whose ignorant squallings about peace and "love" are so mistakenly trumpeted to the world as an allegedly persuasive force by our press.

That they stoically keep silent and maintain their loyalty to their Nation —in the best tradition of the profession of arms—does not mean these men are inhumanly aloof. Appeals may likewise be made to their passions, and what better ear can be found for the outpourings of this prosecutor than one dedicated to "duty, honor, and country." Sated by the offerings of the public press; astonished at the televised antics of those who with impunity present the enemy's flags at the very doors of the Pentagon; and left by tradition and position helpless against such activities while their sons and comrades die in the fetid jungles of Indochina, how grimly they must have viewed this young defendant upon hearing the trial counsel point to him as another who would shout, "Hell no, I won't go," and who preferred a safe sojourn in prison to the infinitely more dangerous rain forests of Vietnam! In my opinion, the effect of such an erroneous argument was incalculable and the cure for it is not to be found in a simple instruction by the law officer to disregard any such comments.

"Human nature does not change merely because it is found in the jury box. The human mind is not a slate, from which can be wiped out, at the will and instruction of another, ideas and thoughts written thereon." People v Deal, 357 Ill 634, 192 NE 649, 652 (1934). And as Mr. Justice Jackson noted in Krulewitch v United States, 336 US 440, 93 L ed 790, 69 S Ct 716 (1949), at page 453: "The naive assumption that prejudicial effects can be overcome by instructions to the jury, . . . all practicing lawyers know to be unmitigated fiction." Indeed, this Court has recognized that instructions are not always sufficient to overcome prejudice. United States v Grant, 10 USCMA 585, 28 CMR 151; United States v Richard, 7 USCMA 46, 21 CMR 172. Here, I am convinced such is the case.

Without minimizing the seriousness of the offenses of which the accused was convicted, my brothers' observation that it grew out of inability of

those present to cope with "an emotional private," at the outset involved in an incident of "minor proportions," accurately describes the situation. It resulted in injury to no one. The accused's record, both civilian and military, was spotless, and, contrary to the prosecutor's declarations, he actively sought return to military duty. Nevertheless, the court-martial swiftly adjudged a sentence of dishonorable discharge, forfeiture of all pay and allowances, reduction, and confinement at hard labor for five years. The severity of this punishment makes it apparent the court was, despite the law officer's instructions, influenced unfairly by the argument. As in United States v Gerlach, 16 USCMA 383, 385, 37 CMR 3, "It cannot, therefore, be said that trial counsel's argument was so insignificant as to be entirely devoid of persuasiveness." I would so hold, and record my disagreement with the contrary decision of the majority.

I would reverse the decision of the board of review and return the case for appropriate correction of the sentence.