UNITED STATES, Appellee

v

KERRY M. GARZA, Private First Class,
U. S. Marine Corps, Appellant

20 USCMA 536, 43 CMR 376

No. 23,658

April 30, 1971

*Lieutenant Charles W. Corddry, III,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Donald B. Brant, Jr.,* JAGC, USNR.

*Captain Frank J. Kaveney,* USMCR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever,* USMC, and *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

## Opinion of the Court

FERGUSON, Judge:

The accused pleaded guilty to two specifications alleging the unlawful purchase of stolen Government weapons (an M–14 rifle and a .45 caliber pistol), knowing them to have been stolen, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. His sentence, as reduced by the Court of Military Review, extends to a bad-conduct discharge, confinement at hard labor for eight months, forfeiture of all pay and allowances for the period of confinement, and reduction to the grade of E–1. We granted review on the single issue of:

Whether the accused was prejudiced by trial counsel's references to the political philosophy of accused and his family, allegedly supported by an unproduced secret dossier.

Subsequent to the acceptance of the accused's plea by the military judge, trial counsel announced that he had no evidence of prior convictions by court-martial or prior nonjudicial punishment to offer. He then attempted to introduce in evidence page 11 of the defendant's service record book reflecting that the accused had been recommended for change of work specialty and transfer to another organization which did not require a security clearance. As the record noted:

". . . Pfc GARZA does not fit the criteria to grant him a Sec Cln Pfc GARZA admits he believes in the Socialist Workers Party and has been associated with Relatives that are MBrs of hte [sic] Socialist Workers Party prior and subsequent to enl in USMC."

Defense counsel objected to the entry on the ground that information with regard to the accused's political belief was not relevant to the trial. Counsel acknowledged that Garza's security clearance had been terminated because of these beliefs. The military judge sustained the defense objection.

Trial counsel thereupon called as a witness Gunnery Sergeant Ronan, accused's immediate supervisor, to testify as to Garza's performance as a Marine. After establishing Ronan's relationship with the accused, trial counsel, by direct questioning, elicited from Ronan testimony that the accused had "requested a discharge for political reasons." When defense counsel objected that this testimony was irrelevant and highly prejudicial, the prosecution argued that it "goes to the very core of the performance of this man as a Marine." The military judge ruled that he had "denied the admission of the previous exhibit on the grounds it was hearsay" but "his beliefs coming in as competent evidence from a witness to which he told his beliefs will be admissible in this court." Thereafter, the witness testified:

"The man stated to me that his father and an uncle had run for a national and state office through a minority group such as the Socialist Party, I believe, sir, which I believe is a Marxist organization. At that time I sent him to the First Sergeant who turned him over to ONI, and they withdrew his clearance based on their investigation, sir."

The witness also testified that the accused's performance as a Marine was "[b]elow average"; he categorized him as not being the "desired caliber of man for the Marine Corps"; and he testified: "He has had repeated problems with junior NCO's, such as obedience to orders, disrespect, and things of this nature, sir."

When defense counsel moved to strike Ronan's testimony as to the accused's political beliefs, the military

judge denied the motion and declared that he would "consider the beliefs of the accused as it may have a bearing on his performance and his conduct as a Marine."

During his cross-examination of Ronan, defense counsel introduced pages from the accused's service record book reflecting that *no judicial or nonjudicial action* had been taken against Garza since his entry into the Marine Corps.

The accused testified under oath in mitigation and expressed a desire to earn an honorable discharge from the service, despite his previous request for separation. He stated that he had not used firearms prior to his entry into the Marine Corps and was fascinated by them. He was not, in any way, associated with the original theft of the weapons.

In cross-examination, trial counsel attempted to bring out the results of the accused's interview with agents of the Office of Naval Intelligence relative to his political beliefs. The objection of defense counsel was sustained by the military judge. After the judge had examined the accused, trial counsel obtained from the accused a denial that he had ever been associated with individuals or groups which advocated "the overthrow of our constitutional form of government." When he asked the accused if his mother was a Marxist, defense counsel objected. During the ensuing argument, trial counsel referred to a document marked " 'Secret' " regarding "the entire background of the family and the defendant." The military judge held that information pertaining to Garza's family would not be pertinent and sustained the previous defense objection.

In his argument on sentence, trial counsel again referred to the fact that the accused's security clearance had been revoked.

The staff judge advocate, in his review for the convening authority, referred to the above-noted evidence as follows:

**538**

## "7. *ERRORS AND IRREGULARITIES:*

"During the sentencing stage of the trial and prior to the presentation of any evidence in extenuation and mitigation by the defense, the trial counsel elicited character testimony from Gunnery Sergeant RONAN, the accused's company Gunnery Sergeant. The witness stated that the accused's performance as a Marine for the eight months immediately preceding trial was below average, that the accused had requested discharge at one point, and that the witness thought that one reason for the accused's poor performance was his political philosophy, which the accused identified to the witness as socialist.

"The military judge admitted the evidence as to the accused's political philosophy only insofar as it had a bearing on his performance as a Marine. Admitting the evidence for this limited purpose was within the discretion of the court. *The character testimony of Gunnery Sergeant RONAN should not have been admitted since it was neither prosecution rebuttal to defense evidence as to the accused's character, nor evidence permissible under paragraph 75, MCM, relating to matter presented for the court's consideration during the presentencing stage of trial.*

"*However, in view of the absence of any objection by the defense counsel, the error was not prejudicial.*

"There were no errors to the prejudice of the substantial rights of the accused." [Emphasis supplied.]

We agree with the staff judge advocate that the *character* testimony of Sergeant Ronan was inadmissible, although we are at a loss to understand his statement that defense counsel did not object. The record is to the contrary.

Paragraph 75, Manual for Courts-Martial, United States, 1969 (Revised edition), provides that after the findings of guilty have been announced, the prosecution and defense may pre-

sent *appropriate matter* to aid the court in determining the kind and amount of punishment to be imposed. In United States v Johnson, 19 USCMA 464, 42 CMR 66 (1970) and United States v Montgomery, 20 USCMA 35, 42 CMR 227 (1970), this Court discussed at length the greater latitude granted in this area by the revised Manual. The new Manual, however, did not open the door to testimony of the nature presented here.

In United States v King, 12 USCMA 71, 73, 74, 30 CMR 71 (1960), the Judges of this Court unanimously declared that "facts in aggravation should be concerned with heinous circumstances surrounding the offense and *the character of the accused if it is placed in issue.*" (Emphasis supplied.) Clearly, Sergeant Ronan's testimony concerning the accused's relatives and the withdrawal of his security clearance had nothing to do with any of these matters. Of greater significance is the fact that the testimony was introduced by the prosecution before the defense had presented any testimony in mitigation and was designed to increase the seriousness of the accused's offenses. For what other reason could it have been offered? Actions of others, not connected with the offense under consideration, do not add to the seriousness of the crime committed, nor do they aid the court in fitting the punishment to the person on trial. Cf. United States v King, supra.

Trial counsel, in effect, gave unsworn testimony when he referred to a document marked " 'Secret' " regarding "the entire background of the family and the defendant." He thereby inferred that the accused was actively participating, with his family, in activity inimical to the best interests of the United States. Regarding this type of argument on sentence, we said in United States v Long, 17 USCMA 323, 327, 38 CMR 121 (1967):

"An appeal to passion or prejudice is wholly improper. Viereck v United States, 318 US 236, 87 L Ed 734, 63 S Ct 561 (1943). It is also improper to associate the accused with other offensive conduct or persons, without justification of evidence in the record. Handford v United States, 249 F2d 295, 298 (CA 5th Cir) (1957) ; United States v Socony-Vacuum Oil Co. 310 US 150, 84 L Ed 1129, 60 S Ct 811 (1940)."

The only question for resolution is whether the accused was prejudiced by the admission of Sergeant Ronan's testimony and the repeated efforts by trial counsel to paint the accused as an undesirable individual because of political beliefs. As the staff judge advocate noted, the military judge declared at trial that he would consider the evidence only insofar as it had a bearing on the accused's performance as a Marine.

In United States v Montgomery, supra, a majority of this Court held, at page 39:

". . . A trial judge, as distinguished from a jury, must be presumed to have exercised the proper discretion in distinguishing between material and immaterial evidence introduced at the trial and to have based his decision only on the former, in the absence of a clear showing to the contrary by the appellant. United States v Menk, 406 F2d 124 (CA 7th Cir) (1968)."

Cf. United States v Carroll, 20 USCMA 312, 43 CMR 152 (1971).

The accused, in this case, enlisted in the Marine Corps while still only seventeen years of age, for a period of three years. He was barely eighteen at the time of the commission of the offenses. Contrary to the testimony of Sergeant Ronan that his performance was substandard and that he had repeated problems with his superiors, his conduct and proficiency marks were 4.0 and 4.1, respectively, and he had received no prior nonjudicial punishment or court-martial convictions. He was, in addition, not under restraint while awaiting trial. The accused cooperated by pleading guilty to the charged offenses and explained that he purchased the weapons on an impulse because he was fascinated by them. He testified that he would be willing to complete his

obligated service in order to obtain an honorable discharge.

What should have been a routine hearing on sentence, insofar as any such proceeding can be so classified, was turned into a political trial by the prosecutor's repeated and impermissible efforts, over defense objection, to parade before the judge the *allegedly heinous political philosophy* of the accused and his family. In addition, there was considerable confusion at the trial over the true nature of the accused's political allegiance. The words *socialist, socialist party, socialist workers party,* and *marxist organization* were bandied about as though they were interchangeable in meaning and identity. Even a primary student of political thought and history is aware that this is simply not a fact. Trial counsel's final reference to a "group, or combinations of persons which advocates [sic] the overthrow of our constitutional form of government," clearly reflects his myopic vision regarding this situation. The trial judge's belief that he could consider the accused's political philosophy insofar as it had a bearing on his performance as a Marine, is not clear. In what manner did it affect his performance? Sergeant Ronan's testimony that it rendered the accused an ineffective Marine was rebutted by the record of the accused's conduct and proficiency marks. The lack of judicial and nonjudicial punishment is further evidence of the accused's ability to serve honorably with the Marine Corps. Surely, it cannot seriously be contended that the withdrawal of the accused's security clearance was such information as could be considered as appropriate matter to aid the court in determining the kind and amount of punishment to be imposed for the offense to which the accused pleaded guilty. Paragraph 75, Manual, supra. Cf. United States v Montgomery, supra.

Under the circumstances of this case, we believe that there is at least a fair risk that the military judge was improperly influenced, albeit subconsciously, in adjudging an appropriate sentence by the inadmissible evidence.

The staff judge advocate's erroneous advice that the accused was not prejudiced in light of the failure of defense counsel to object, misled the convening authority and precluded that individual from proper consideration of the record. United States v Rivera, 20 USCMA 6, 42 CMR 198 (1970). The question was not considered by the Court of Military Review because the issue was raised, *sua sponte,* by this Court.

Ordinarily the Court of Military Review is the appropriate tribunal for reassessment of sentences found faulty at this level. However, this accused has already served his sentence to confinement at hard labor,[1] and the only unexecuted portion of the sentence is the punitive discharge. Under these circumstances, were one simply to return the case to the Court of Military Review for reassessment of the sentence, we would thereby imply that the bad-conduct discharge may be affirmed. Such a course would deprive the accused of all meaningful relief and would rightly suggest that this Court is prepared to wink at the type of conduct displayed by trial counsel in this case. The disastrous effects of such a situation upon the system of military justice itself are so manifest as to require us to eliminate that possibility. Cf. United States v Nelson, 18 USCMA 177, 39 CMR 177 (1969).

The decision of the Court of Military Review as to sentence is reversed. The record of trial is returned to the Judge Advocate General of the Navy. The Court of Military Review may reassess and approve a sentence which does not include a bad-conduct discharge.

Chief Judge QUINN concurs.

DARDEN, Judge (concurring in part and dissenting in part):

If the military judge in this case had

---

[1] We were informed by appellate defense counsel in his brief that on December 30, 1970, the Secretary of the Navy remitted all of appellant's sentence except for the bad-conduct discharge.

announced that he would disregard trial counsel's references to the political affiliations of the accused and his family, I would credit the judge, under the reasoning in United States v Montgomery, 20 USCMA 35, 42 CMR 227 (1970), with the ability to disregard the inadmissible evidence. Because of the judge's announcement that he would consider the evidence as it bore on the accused's performance as a Marine, I agree that reversible error occurred.

I disagree with the Court's remedial action. Permitting the Court of Military Review to reassess and to approve a sentence that does not include a bad-conduct discharge is in effect indistinguishable from our ordering the charge dismissed. If a flawless trial had occurred, the seriousness of the basic offense is enough to justify a sentence that includes a punitive discharge. Consequently, I would permit a rehearing.