UNITED STATES, Appellee,

v.

Alexander NELSON, Private First Class,
U.S. Army, Appellant.

No. 29,772.

U. S. Court of Military Appeals.

Dec. 12, 1975.

Captain John M. Nolan argued the cause for Appellant, Accused. With him on the brief were Colonel Victor A. DeFiori, Lieutenant Colonel James Kucera, and Captain Michael R. Caryl.

Captain Nancy M. Giorno argued the cause for Appellee, United States. With her on the brief were Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Captain Steven M. Werner, Captain John R. Erck, and Captain Raymond Michael Ripple.

## OPINION OF THE COURT

FLETCHER, Chief Judge:

Challenging the propriety of the trial counsel's prefindings argument to the jury, the appellant points to three comments which he contends warrant reversal of his general court-martial conviction for twice selling cocaine. The first concerns the prosecutor's reference to Private Nelson's failure to mention his alibi defense in his testimony during the pretrial hearing conducted pursuant to Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832. Second, the appellant challenges the trial counsel's likening of a defense witness' tactics to those of Hitler. And, finally, the appellant contends that the prosecution was improperly permitted during rebuttal argument to interject damaging hearsay not previously admitted into evidence.

I

At trial, the prosecution's key witness, Specialist Tureaud, implicated the accused in two sales of cocaine testifying that he personally had obtained the drug from Private Nelson on September 8 and 13, 1973. In addition to presenting character evidence which portrayed Tureaud as a witness unworthy of belief, the defense sought to further erode Tureaud's credibility in the eyes of the jury by establishing an alibi defense with regard to the alleged September 8 transaction through the testimony of the appellant and his roommate.

On cross-examination of the accused concerning his alibi, the trial counsel elicited that Private Nelson previously had testified during the Article 32 investigation but had not mentioned his alibi. The accused responded that he had not been asked to reveal his whereabouts on September 8.

The prosecution's closing argument to the jury urged rejection of the accused's alibi defense:

Why was . . . [Private Nelson's] testimony so late on this matter? He had been in jail for four days, or five days, prior to the time this Article 32 investigation was held. He had these days to think about nothing but the offense charged against him. During that time he could not remember, apparently, what he did on the 8th; he never mentioned it to the defense counsel, nor in his testimony at the Article 32 investigation, which would have been a golden opportunity to have the charges against him dropped. He did not mention it. Why would he forget something like that, or why would his memory suddenly become better after he was released from pretrial confinement, was allowed to go find out what movies were playing and talk to his friend?

Appellant now contends that the prosecutor's statement amounted to an impermissible comment on his right to remain silent. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); United States v. Stegar, 16 U.S.C.M.A. 569, 37 C.M.R. 189 (1967); United States v. Kavula, 16 U.S.C.M.A. 468, 37 C.M.R. 88 (1966).

In addition to maintaining that the accused was not prejudiced by the argument and asserting that his failure to object amounts to a waiver, the Government suggests that the prosecutor's statement did not rise to the level of a comment on the accused's privilege against self-incrimination since the accused himself did not invoke such a privilege either at trial or during the Article 32 investigation. *United States v. Dudziniski*, 33 C.M.R. 509 (A.B.R. 1963). Further, Government counsel stress that the prosecutor's comment was appropriate since the accused's pretrial silence was "blatantly inconsistent" with his alibi defense presented for the first time at trial. *Compare United States v. Fairchild*, 505 F.2d 1378, 1382 (5th Cir. 1975) and *United States v. Ramirez*, 441 F.2d 950 (5th Cir. 1971), *cert. denied*, 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113 (1971), *with United States v. Anderson*, 162 U.S.App.D.C. 305, 498 F.2d 1038 (1974) and *Johnson v. Patterson*, 475 F.2d 1066 (10th Cir. 1973), *cert. denied*, 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973).

■ We view as substantial the distinction between a prosecutor's comment on an accused's refusal to incriminate himself which flows from his invocation of the Fifth Amendment or Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, and the situation presented here in which the prosecutor advises the jury of the accused's election to make an exculpatory statement prior to trial which did not include the defense of alibi upon which he later sought to rely at trial. Condemnation of the first approach is generally warranted, despite its probative value, because the Government has attempted to transform a constitutional shield into a prosecutorial sword. *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). We are unwilling to extend such a concept, however, to shelter an accused who attempts to structure different defenses at different times. The trial counsel's allusion to the metamorphosis which was underway in appellant's successive attempts to exculpate himself was, we believe, fair comment on the weight to be accorded the defense theory of alibi.

While we appreciate appellate defense counsel's concern that the argument was damaging, we are not persuaded that the trial counsel's approach offended either constitutional or statutory safeguards. *United States v. Doctor*, 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956); *cf. United States v. Saint John*, 23 U.S.C.M.A. 20, 48 C.M.R. 312 (1974); *United States v. Russell*, 15 U.S.C.M.A. 76, 35 C.M.R. 48 (1964).[1]

## II

■ Appellant additionally takes issue with the trial counsel's likening of a defense witness' tactics to those employed by Hitler:

> Then there's the testimony of Durham; what is left of Durham's testimony. What it is is that he claims that Tureaud offered to sell him a kilogram of cocaine for $4000. Durham has never had $4000 in his hands in his life. That is the most preposterous story I've ever heard. I think that Durham's tactic is the same as that used by Hitler—tell the people the biggest lie you can imagine, and they'll believe it. Durham felt that he could come into this court and give some sort of "peek-a-boo" testimony—give half truths—and hide behind the privilege, but, it didn't work. Durham is a man not to be believed. He is simply incredible and his testimony is nothing more than nonsense.[2]

---

1. In view of our disposition of this facet of appellant's argument, we need not decide whether the *Fairchild-Ramirez* approach offends either the Fifth Amendment or Article 31, UCMJ. *Compare United States v. Fairchild*, 505 F.2d 1378, 1382 (5th Cir. 1975) *and United States v. Ramirez*, 441 F.2d 950 (5th Cir. 1971), *with United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).

2. Even though we appreciate that, in the heat of argument, counsel on occasion may be carried to unintended extremes, *Crumpton v. United States*, 138 U.S. 361, 11 S.Ct. 355, 34 L.Ed. 958 (1891), the likelihood of such abuses could be minimized by periodic refamiliarization with the ethical standards applicable to attorneys who practice before courts-martial. Aside from the legal consequences of the trial counsel's argument, the above-stated remarks

While appellate defense counsel acknowledge that the prosecutor may comment earnestly and forcefully on the evidence as well as any inferences which reasonably may be drawn therefrom,[3] they contend that the trial counsel's reference to Hitler was both inflammatory and based upon a matter not within evidence. *United States v. Garza*, 20 U.S.C.M.A. 536, 43 C.M.R. 376 (1971); *United States v. Long*, 17 U.S.C. M.A. 323, 38 C.M.R. 121 (1967). We agree.

■ Placing the accused's witness in such an offensive historical perspective for a military jury was patently erroneous and is analogous to the situation which we condemned in *Long*.[4]

It is also improper to associate the accused with other offensive conduct or persons, without justification of evidence in the record. *Handford v. United States*, 249 F.2d 295, 298 (C.A.5th Cir.) (1957); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

Even though error, however, the Government contends that the defense counsel's failure to make timely objection to the prosecutor's argument amounts to a waiver. In *United States v. Doctor, supra*, 7 U.S.C. M.A. at 135, 21 C.M.R. at 261, we observed:

The failure to object in the trial arena where the harmful effects, if any, might be ameliorated by prompt instructions . . . normally raises the doctrine of waiver and precludes an accused from asserting a claim of error on appeal. However, that principle is not usually applied if the abuse of discretion is so flagrant as to charge the law officer with a duty to stop the discourse sua sponte.

More recently, in *United States v. Pinkney*, 22 U.S.C.M.A. 595, 598, 48 C.M.R. 219, 222 (1974), we stressed:

In an adversary system a rule rewarding nonfeasance would encourage a party to forego litigating the issue at trial in the expectation that he might win a rehearing on the error if the first trial went against him. No, the reason for requiring prompt objection at trial is to give the court an opportunity to correct an error then and there, and thus avoid further costly proceedings. If the objectionable matter can be rendered unobjectionable by additional explanation of evidence, or if the trial judge can neutralize the damage by cautionary instructions, the failure to object deprives the trial court of these opportunities to protect the trial from reversible error. There are, of course, times when the trial judge himself must intercede on his own motion to preserve the trial from error. . . .

■ While we are perplexed as to why the trial judge took no action in this case,[5] we nevertheless do not believe that counsel's argument was so inflammatory[6] as to

---

appear to be at variance with at least three separate and distinct ethical standards applicable to the prosecution of criminal cases:

It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. ABA Standards, The Prosecution Function § 5.8(b) (1971).

The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. ABA Standards, The Prosecution Function § 5.8(c) (1971).

It is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record. . . . ABA Standards, The Prosecution Function § 5.9 (1971).

3. *United States v. Doctor*, 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956).

4. *United States v. Long*, 17 U.S.C.M.A. 323, 327, 38 C.M.R. 121, 125 (1967). *Accord, Viereck v. United States*, 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734 (1943).

5. "Ordinarily a trial court should summarily exclude any reference in argument or otherwise to factual matter which is beyond the scope of the evidence in any significant way." Commentary, ABA Standards, The Prosecution Function § 5.9; *accord*, paragraph 72c, Manual for Courts-Martial, United States, 1969 (Rev.).

6. The absence of defense objection is, itself, some measure of the minimal impact the prosecutor's remark had on the jury. *United States v. Saint John*, 23 U.S.C.M.A. 20, 48 C.M.R. 312 (1974); *United States v. Ryan*, 21 U.S.C.M.A. 9, 44 C.M.R. 63 (1971); *United States v. Wood*, 18 U.S.C.M.A. 291, 40 C.M.R. 3 (1969).

trigger the trial judge's legal obligation to act sua sponte. *See United States v. Graves,* 23 U.S.C.M.A. 434, 50 C.M.R. 393, 1 M.J. 50 (1975). *See also United States v. McGee,* 23 U.S.C.M.A. 591, 50 C.M.R. 856, 1 M.J. 193 (1975).

## III

Appellant finally challenges the trial counsel's rebuttal argument in which he interjected hearsay testimony which was neither offered nor admitted into evidence. During its case in chief, the prosecution sought to bolster the credibility of its key witness, Specialist Tureaud, by corroborating portions of his testimony which dealt with the events which transpired prior to and after the alleged drug transactions. The trial counsel elicited from Agent Heckmann, with whom Specialist Tureaud had worked in arranging the drug buys, that Tureaud had called him on a Saturday morning to request $100 for a cocaine purchase. The trial counsel then asked, "Now, without stating the name of the individual, did [Tureaud] in fact identify the individual to you he was going to make the purchase from?" Agent Heckmann responded, "Yes, he did."

In referring to this testimony during his closing argument, the prosecutor maintained:

[Tureaud's] testimony is corroborated by the testimony of Agent Heckmann; that is, first, that he was called prior to the first buy, told who the buy was going to be made from, and how much was going to be purchased, and that he needed $100.

The trial defense counsel apparently believed that the prosecution's argument inferred the existence of a matter not in evidence for he argued:

Now, trial counsel says Tureaud is corroborated through Heckmann. He says to us in closing, that Heckmann received a phone call from Tureaud, and Tureaud said to Heckmann, "I am going to make a buy from Nelson." I don't believe he said that; I don't believe either witness said

that. I think he said, "I need $100 to make a buy," but I don't remember Mr. Heckmann saying from whom.

Undoubtedly prompted by what he perceived as the defense counsel's misinterpretation of his previous argument the trial counsel, in rebuttal, responded:

First, the question of whether or not Tureaud told Heckmann before the sale who he was going to buy it from. Tureaud testified directly that he did. The question asked of Tureaud was, "Without reference to specific names, did Tureaud identify the person from whom he was going to purchase cocaine?", and the answer to that question was, "Yes." I'm sorry; that question was asked of Agent Heckmann. The reason it was asked that way is because any other way, it would have been leading or calling for hearsay. Heckmann cannot take the stand and say that he was told on 8 September that Tureaud was going to buy from Nelson; that would be hearsay as to whether or not in fact Tureaud was going to buy.

The defense counsel objected to the prosecutor's argument at that point, but he was overruled by the trial judge who observed that the trial counsel was "merely stating why he asked the question in the manner in which he did."[7]

Appellant contends that, regardless of the purpose of the response, the prosecutor's remark succeeded in placing in evidence a crucial, but prohibited, link in the Government's case. Government counsel, on the other hand, maintain that the trial defense counsel opened the door for such a comment by misstating the prosecutor's initial argument. *United States v. Doctor, supra.* Further, the Government asserts that the accused was not prejudiced by the trial counsel's comment.

█ Repeatedly, we have cautioned counsel to limit their arguments to evidence in the record and to such fair inferences as may be drawn therefrom. *See, e. g., Unit-*

---

**7.** While the prosecutor framed his remarks in terms of what he and his witness could not do, we are satisfied that the jury was more than

capable of deciphering the message the trial counsel sought to convey.

ed States v. Johnson, 12 U.S.C.M.A. 602, 31 C.M.R. 188 (1962); United States v. King, 12 U.S.C.M.A. 71, 30 C.M.R. 71 (1960). In addition, as we previously have pointed out, the ethical standards applicable to those who practice before courts-martial prohibit reference to or argument based upon facts outside the record. ABA Standards, The Prosecution Function § 5.9 (1971). See also ABA Code of Professional Responsibility, DR 7–106(C)(1). "The rule confining counsel to legitimate argument is not based on etiquette, but on justice. Its violation is not merely an overstepping of the bounds of propriety, but a violation of a party's rights." Cherry Creek National Bank v. Fidelity and Cas. Co., 207 App.Div. 787, 791, 202 N.Y.S. 611, 614 (1924). This is particularly true in the criminal justice sphere where an individual's personal liberty is at stake.

■ While the Government correctly observes that the trial defense counsel, to some extent, misinterpreted the prosecutor's initial argument, the defense nevertheless did not misstate the evidence of record. To the contrary, he correctly summarized Agent Heckmann's testimony for the court: "I think he said, 'I need $100 to make a buy,' but I don't remember Mr. Heckmann saying from whom." Thus, even though the trial counsel certainly was entitled to restate his initial position and to advise the jury that he had been misquoted by the defense attorney, he was not at liberty to further escalate the controversy by interjecting highly damaging, inadmissible hearsay to bolster his own case on the merits. See Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

■ Referring to other evidence which was available but for a legal "technicality" is analogous to a prosecutor's reference to other witnesses who could have, but were not, called to testify. United States v. Tackett, 16 U.S.C.M.A. 226, 36 C.M.R. 382 (1966). In both instances, the prosecution is attempting to buttress through the back door that which it cannot establish through the front. Cf. Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1897). To permit such a maneuver merely to counter a disagreement between counsel on a collateral point would render meaningless the procedural safeguards designed to assure the integrity and fairness of the trial. We conclude, therefore, that the trial judge erred in overruling defense counsel's timely objection to the prosecutor's argument.[8]

■ We cannot say that the interjection of this crucial corroborating evidence did not tilt the scales against the accused in the minds of the court members. Further, we are not persuaded that the trial judge's general instruction advising the court members that their decision should be based upon the evidence of record removed the prejudice which flowed from the prosecutor's comment. This is particularly so where, as here, the jury previously had heard the trial judge overrule the defense counsel's objection to the improper argument. United States v. Tackett, supra. Believing, as we do, that there is a fair risk that the impermissible argument had an effect upon the jury, the accused's conviction cannot stand. United States v. Gerlach, 16 U.S.C.M.A. 383, 37 C.M.R. 3 (1966).

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge COOK and Senior Judge FERGUSON concur.

---

8. As to the correct approach to cure such a comment, see Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).