# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

### Senior Airman DAVID E. ALLGAIER
### United States Air Force

### ACM 38400

### 14 October 2014

Sentence adjudged 8 May 2013 by GCM convened at Patrick Air Force Base, Florida. Military Judge: William C. Muldoon.

Approved Sentence: Dishonorable discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Michael A. Schrama.

Appellate Counsel for the United States: Lieutenant Colonel Christopher T. Smith; Captain Thomas J. Alford; and Gerald R. Bruce, Esquire.

Before

MITCHELL, SANTORO, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

SANTORO, Judge:

At a general court-martial, a military judge accepted the appellant's pleas of guilty to one specification of divers uses of cocaine, two specifications of divers uses of cocaine while on duty as a sentinel or lookout, two specifications of divers introductions of cocaine onto military bases, one specification of possession of cocaine, one specification of possession of a Schedule II controlled substance (hydromorphone hydrochloride), and one specification of use of cocaine, all in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. Officer members sentenced the appellant to a dishonorable discharge, confinement for 2 years, forfeitures of all pay and allowances, and reduction to E-1. The

convening authority approved the sentence as adjudged. Before us, the appellant argues that (1) the military judge erred in denying relief pursuant to Article 13, UCMJ, 10 U.S.C. § 813; (2) the trial counsel's sentencing argument was improper[1]; and (3) the military judge abused his discretion in denying the appellant's motion to merge specifications for sentencing. We disagree and affirm.

*Background*

The appellant was randomly selected to provide a urine sample pursuant to the Air Force's drug testing program. His sample contained the cocaine metabolite at a level above the Department of Defense cutoff for reporting positive results. Investigators arrested the appellant and, in a subsequent search, found three clear pipes with burned tips in his possession. Those pipes later tested positive for cocaine residue.

After waiving his Article 31, UCMJ, 10 U.S.C. § 831, rights, the appellant told investigators that he began using crack cocaine after being introduced to it by a civilian he met at a bar. He admitted becoming addicted to crack cocaine and said that he had used cocaine both on and off base on multiple occasions, sometimes purchasing drugs while in uniform and introducing them onto two Air Force installations. The appellant told a fellow Airman that he spent approximately $16,000 on crack cocaine in just over two months.

The appellant's duties as a security forces member included postings as an entry controller at Patrick Air Force Base (AFB), Florida, and as a sentinel/lookout at Cape Canaveral Air Force Station, Florida. While performing duties at both locations—and at Patrick AFB, while armed—the appellant used crack cocaine on multiple occasions. He also admitted smoking crack cocaine while driving on Patrick AFB.

A subsequent "Bickel"[2] urinalysis returned a result of 781,997 ng/mL of the cocaine metabolite, the second-highest result ever recorded at the drug testing laboratory, and above the Department of Defense positive-reporting cutoff of 100 ng/mL.

After the appellant's law enforcement interview and before his court-martial, he was arrested by civilian police when a drug detection canine alerted on a vehicle in which he was riding. The appellant had in his possession crack cocaine and hydromorphone hydrochloride, a Schedule II controlled substance.

Additional facts relevant to resolve the assigned errors are below.

---

[1] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).
[2] *United States v. Bickel*, 30 M.J. 277 (C.M.A. 1990).

The appellant alleges, as he did at trial, that the conditions of restraint imposed upon him prior to trial were tantamount to confinement and therefore should result in a 129-day credit against his sentence. *See United States v. Mason*, 19 M.J. 274 (C.M.A. 1985). However, because the appellant's confinement has been served, he instead requests that the dishonorable discharge not be approved or, in the alternative, that it be mitigated to a bad-conduct discharge.

It is undisputed that the appellant was restricted to base, was further restricted to the dormitory between 2100-0700, and had his presence in the dormitory checked twice per night. The military judge found that there was no intent to punish the appellant, in part because (1) the appellant was allowed to leave the base every time he requested to do so; (2) he had access to the entire military base, with all of the services available on the base, during his on- and off-duty hours; (3) his duty hours were not in excess of a standard duty day; (4) his removal from normal security forces duties was reasonable given the nature of his misconduct; and (5) other than being in the dormitory overnight, he had unrestricted access to all base facilities.

We review the military judge's factual findings for clear error. *United States v. McCarthy*, 47 M.J. 162, 165 (C.A.A.F. 1997). While the second and fifth findings above are essentially the same, all of the military judge's factual findings are amply supported by the record and not clearly erroneous.

Based on these factual findings, we review de novo whether the appellant is entitled to pretrial confinement credit. *See United States v. Smith*, 56 M.J. 290, 292 (C.A.A.F. 2002).

Article 13, UCMJ, states:

> No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

Article 13, UCMJ, does not specifically address other forms of pretrial restraint. However, Rule for Courts-Martial (R.C.M.) 304(f) provides:

> Pretrial restraint is not punishment and shall not be used as such. No person who is restrained pending trial may be

subjected to punishment or penalty for the offense which is the basis for that restraint. Prisoners being held for trial shall not be required to undergo punitive duty hours or training, perform punitive labor, or wear special uniforms prescribed only for post-trial prisoners. This rule does not prohibit minor punishment during pretrial confinement for infractions of the rules of the place of confinement. Prisoners shall be afforded facilities and treatment under regulations of the Secretary concerned.

"The decision to impose pretrial restraint, and, if so, what type or types, should be made on a case-by-case basis . . . [and t]he restraint should not be more rigorous than the circumstances require to ensure the presence of the person restrained or to prevent foreseeable serious criminal misconduct." R.C.M. 304(c), Discussion.

We consider several factors in resolving this issue. Among them are:

1. What similarities, if any, in daily routine, work assignments, clothing attire, and other restraints and control conditions exist between sentenced persons and those awaiting disciplinary disposition?

2. If such similarities exist, what relevance to customary and traditional military command and control measures can be established by the government for such measures?

3. If such similarities exist, are the requirements and procedures primarily related to command and control needs, or do they reflect a primary purpose of stigmatizing persons awaiting disciplinary disposition?

4. If so, was there an intent to punish or stigmatize a person waiting disciplinary disposition?

*Smith*, 53 M.J. at 172 (citing Francis A. Gilligan & Fredric I. Lederer, *Court-Martial Procedure* § 4-90.00 at 136–37 (2d ed. 1999)) (internal quotation marks omitted).

We conclude, as did the military judge, that there was no violation of Article 13, UCMJ. The appellant had full use of all base facilities, received permission to leave base each time he asked, and performed military duties appropriately tailored to the misconduct to which he confessed. His further restriction to his dormitory during regular sleeping hours does not make his situation tantamount to confinement. *See United States v. Rendon*, 58 M.J. 221, 225–26 (C.A.A.F. 2003) (holding that while appellee was

geographically restricted and faced the moral restraints attendant to the limitations imposed upon him, restriction to base was not tantamount to confinement).

*Sentencing Argument*

The appellant argues that trial counsel improperly argued the following as aggravating factors: (1) the level of the cocaine metabolite in the appellant's urine, (2) the appellant's use of cocaine while on duty as a sentinel, and (3) the physiological effects of cocaine use.

Trial defense counsel did not object to the prosecution's argument; we therefore review for plain error. *See United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007); *see also United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001). "[T]o prevail under a plain error analysis, [the appellant] must demonstrate that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right'" of the appellant. *Erickson*, 65 M.J. at 223 (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

"A trial counsel is charged with being a zealous advocate for the Government." *United States v. Barrazamartinez*, 58 M.J. 173, 176 (C.A.A.F. 2003) (citing *United States v. Nelson*, 1 M.J. 235, 238 (C.M.A. 1975)). As a zealous advocate, trial counsel may "argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citing *Nelson*, 1 M.J. at 239). During sentencing argument, "trial counsel is at liberty to strike hard, but not foul, blows." *Baer*, 53 M.J. at 237. Trial counsel may not "seek unduly to inflame the passions or prejudices of the court members." *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983) (citing *United States v. Shamberger*, 1 M.J. 377 (C.M.A. 1976)).

The court heard evidence of the level of the cocaine metabolite in the appellant's urine and of the Department of Defense cutoff for reporting positive results. The court also heard evidence that the appellant's tests were the 18th (initial test) and 2nd (second test) highest results ever reported by the drug testing laboratory. The stipulation of fact, to which the appellant agreed, contained evidence of his drug use while on duty as a sentinel. Finally, a prosecution forensic toxicologist testified about the physiological effects of cocaine use. Thus, we conclude that there was evidence in the record to support trial counsel's argument.

We next turn to whether the argument itself was improper. The appellant admitted being addicted to crack cocaine and repeatedly using it during the periods covered by the urinalyses. He also admitted to spending $16,000 on cocaine in a several-week period. We do not believe that trial counsel's references to the 18th- and 2nd-highest reported results were unduly prejudicial given the state of the evidence. Similarly, trial counsel's arguments about the effects of cocaine use—particularly in this case when the appellant

was using drugs while armed and guarding critical assets—appropriately highlighted the significance of the appellant's conduct and were not unduly prejudicial. We find no error, plain or otherwise, and reject this assignment of error.

*Unreasonable Multiplication of Charges*

Four specifications were the subject of a defense motion for merger. Specifications 2 and 4, respectively, alleged the use and introduction of cocaine onto Patrick AFB (the "Patrick specifications"). Specifications 3 and 5, respectively, alleged the use and introduction of cocaine onto Cape Canaveral Air Force Station (the "Cape Canaveral specifications"). Trial defense counsel argued that the Patrick specifications should be merged, as should the Cape Canaveral specifications, as each set arose from the same course of conduct. The military judge granted the motion with respect to the Cape Canaveral specifications but denied it as to the Patrick specifications.[3] The military judge distinguished the Cape Canaveral specifications from the Patrick specifications in that the appellant used the entire quantity of cocaine he introduced onto Cape Canaveral immediately after introducing it, whereas he retained for later use portions of the cocaine he introduced onto Patrick AFB.

When reviewing issues of unreasonable multiplication, we apply a five-part test that considers: (1) whether an objection was made at trial, (2) whether the specifications are aimed at distinct criminal acts, (3) whether the number of charges and specifications misrepresent or exaggerate the charged criminality, (4) whether the number of charges and specifications unreasonably increase the punitive exposure, and (5) whether the evidence shows prosecutorial overreaching or abuse in drafting the charges. *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004) (citing *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001)). The factors are to be balanced, with no single factor dictating the result. *Id.* We review a military judge's determination that charges were not unreasonably multiplied for an abuse of discretion. *Id.*

In *United States v. Campbell*, 71 M.J. 19 (C.A.A.F. 2012), our superior court stated the concept of unreasonable multiplication of charges may apply differently to findings than to sentencing. In that case, the military judge ruled that the three offenses the accused was charged with were not multiplicious. *Id. at 21.* He deferred ruling on

---

[3] We recognize that the military judge could have exercised his authority to dismiss either Specification 3 or Specification 5 of the Charge on unreasonable multiplication of charges grounds rather than merge the two offenses, given the closely-related nature of the offenses. *See United States v. Campbell*, 71 M.J. 19, 25 (C.A.A.F 2012) (holding that in the context of unreasonable multiplication of charges, a military judge has broad discretion to dismiss offenses, merge offenses, or merge offenses only for purposes of sentencing). We find no abuse of authority in the military judge's decision to merge the offenses for sentencing instead of dismiss one of the specifications, particularly since this is the remedy trial defense counsel requested with regard to this set of specifications. *Cf. United States v. Elespuru*, 73 M.J. 326, 329–30 (C.A.A.F. 2014) (recognizing that dismissal of one specification charged in the alternative of another may be appropriate where the factfinder returns findings of guilt on both specifications, even where the issue has been waived at trial.)

the issue of unreasonable multiplication of charges until sentencing, at which time he merged the three offenses into one for purposes of sentencing. *Id.* The court found the military judge did not abuse his discretion, noting it was within the judge's discretion to conclude that for sentencing purposes the "specifications should be merged and that it would be inappropriate to set the maximum punishment based on an aggregation of the maximum punishments for each separate offense." *Id.* at 25.

Applying *Campbell* and *Quiroz* to this case, we find that the military judge did not abuse his discretion in determining that Specifications 2 and 4 were not an unreasonable multiplication of charges. The specifications were aimed at different crimes with distinct elements and conduct that occurred on different occasions. The Government's charging scheme did not exaggerate the appellant's criminality or unreasonably increase his punitive exposure. We find no evidence of prosecutorial overreaching or abuse.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court