**UNITED STATES, Appellee;**

v.

**Terry KNICKERBOCKER, Private, U. S. Army, Appellant.**

**No. 32,192.**

**SPCM 11280.**

U. S. Court of Military Appeals.

Feb. 28, 1977.

---

*Colonel Alton H. Harvey, Captain Steven J. McAuliffe,* and *Captain Lawrence E. Wzorek* were on the brief for Appellant, Accused.

---

*Colonel Thomas H. Davis, Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., Major Steven M. Werner, Captain Conrad J. Rybicki, Captain William C. Kirk,* and *Captain Regis J. McCoy* were on the brief for Appellee, United States.

Opinion of the Court

COOK, Judge:

The accused was convicted by a special court-martial on three charges, including arson of building 2305 at Fort Benning, Georgia. On this appeal, the Government concedes that, in trial counsel's final arguments to the court members in connection with the verdict, he improperly interjected personal comments on matters that were for the court members to determine. However, it contends the accused cannot urge reversal of his conviction on that ground because defense counsel did not object at trial to the improper remarks and the remarks were not so patently prejudicial to the accused as to justify our taking notice of them as "plain error" requiring corrective action in the interest of justice. *See United States v. Nelson,* 1 M.J. 235 (1975); *United States v. Poteet,* 50 C.M.R. 73 (N.C. M.R.1975).

On December 28, 1974, several fires occurred at Fort Benning. Testifying as a Government witness, Private Adams stated he had obtained a flammable wax from the accused and had used it in setting fire to building 2305. Other witnesses testified to different circumstances tending to link the accused to the fire. Testifying in his own behalf, the accused denied any criminal conduct. In his closing argument as to the merits, trial counsel conceded there "were several individuals who were suspected . . . and it is certainly understandable that . . . you [the court members] could be confused as to what transpired and [in] what sequence." He then attempted to reconcile certain aspects of the testimony of the Government witnesses that "appear[ed] to be" inconsistent. Turning to the accused's testimony, he said:

Now, I'm sure as I was attempting to cross-examine, and that is all I can say it was, an attempt, to cross-examine Knickerbocker you noticed that, and I'm sure it was quite obvious to everyone, that I was sort of at a loss as to what questions to ask. And certainly as I listened to that fairy tale, I didn't know where to start. And I think, possibly in looking back at in retrospect, the best thing I could have said was to have said nothing at all. Let the man's testimony speak for itself. It is, by any stretch of one's imagination, incredible at the very least. Now, he tells us that, specific incidents for example, the reason he didn't sign in is because he was with two people, Annie Bangbang and some other girl. Now, I give the man credit for being imaginative. That's foolishness. I don't know quite what to say about the whole gist of his testimony other than, well beyond the grounds of anything reasonable I know about.

Elsewhere in the argument, the trial counsel expressed his personal reaction to parts of the testimony of the accused and other witnesses. The general implication of these is apparent in the *lingua lapsa* that appears in his comment that common sense would have the "biggest role" in determination of the facts "when you retire to consider your *sentence.*" (Emphasis supplied.) Finally, in concluding his remarks on the arson charges, he said:

I think that having listened to all of the evidence in this case, there is very little doubt, *in fact in my mind there is no doubt whatsoever,* that the man sitting over there at the defendant's table, Mr. Terry Knickerbocker, was in fact the individual who was involved in this matter as a principal. [Emphasis supplied.]

At the very least, the judge should have interrupted the trial counsel before he ran the full course of his impermissible argument. Corrective instructions at an early point might have dispelled the taint of the initial remarks. As it stands, the record leads to the uncomfortable conclusion that the accused was patently denied a fair trial as to the arson charges, and requires that

we take cognizance of the error and its effects, despite the absence of timely objection at trial.

With the arson charges, the accused was convicted of breach of restriction. That offense was committed more than a week after the arson events, and trial counsel made only a brief reference to it. He acknowledged that the offense was "certainly a small part" of the case, but nevertheless he stressed that it was "indicative" of the "entire matter." His peroration included the declaration, "Now again, the incredibility of this entire fabrication is such that I find it almost insulting." In view of trial counsel's Siamese-joinder of the offenses, we are unable to conclude that the court members' findings as to the restriction offense were uninfluenced by his extended impermissible argument on the arson charges.

The decision of the United States Army Court of Military Review is reversed, and the findings of guilty of all the charges and the sentence are set aside. A rehearing

may be ordered by a competent court-martial authority.

Judge PERRY concurs.

FLETCHER, Chief Judge (concurring in the result):

I concur with the conclusion reached by the majority. However, I do not believe that intermediate appellate courts or trial courts should be reversed on "gut reaction" alone.

The grounds on which I would reverse this case are found in two standards adopted by the American Bar Association to govern the conduct of the prosecutor and the trial judge in criminal proceedings. While I recognize that these standards are not controlling of their own force in any tribunal, nevertheless, they may be made part of the law where reason supports their inclusion. Because I believe that the standards governing the prosecutor's argument to the jury[1] and the trial judge's supervision of the final argument to the jury[2] properly modulate closing arguments, I would make them the law of the court-martial process.[3]

1. ABA Standards, The Prosecution Function § 5.8 (1971):
   Argument to the jury.
   (a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
   (b) *It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.*
   (c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
   (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. [Emphasis added.]

2. ABA Standards, The Function of the Trial Judge § 5.10 (1972):
   Final argument to the jury.
   The trial judge should not permit counsel during the closing argument to the jury to
   (i) *express his personal opinions as to the truth or falsity of any testimony or evidence or the guilt or innocence of the defendant,*

   (ii) make arguments on the basis of matters outside the record, unless they are matters of common public knowledge or of which the court may take judicial notice, or
   (iii) make arguments calculated to inflame the passions or prejudices of the jury. [Emphasis added.]

3. Clearly the defense counsel is also subject to similar professional and legal guidelines in ABA Standards, The Defense Function § 7.8 (1971):
   Argument to the jury.
   (a) In closing argument to the jury the lawyer may argue all reasonable inferences from the evidence in the record. It is unprofessional conduct for a lawyer intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
   (b) It is unprofessional conduct for a lawyer to express his personal belief or opinion in his client's innocence or his personal belief or opinion in the truth or falsity of any testimony or evidence, or to attribute the crime to another person unless such an inference is warranted by the evidence.
   (c) A lawyer should not make arguments calculated to inflame the passions or prejudices of the jury.
   (d) A lawyer should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting

These standards governing closing arguments in a criminal case reflect the ultimate outcome of a case-by-case analysis of this issue in our law. The Court has long condemned arguments such as that detailed by the majority, *United States v. Doctor,* 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956);[4] recently we have properly shifted the primary responsibility for precluding improper argument from the defense counsel to the trial judge. *See United States v. Shamberger,* 1 M.J. 377 (1976); *United States v. Nelson,* 1 M.J. 235 (1975). I would hold that this trial judge was under an affirmative duty to interrupt this improper argument, and *sua sponte* give the necessary cautionary instructions to the court members. *United States v. Ryan,* 21 U.S.C.M.A. 9, 44 C.M.R. 63 (1971); *United States v. Davis,* 47 C.M.R. 50 (A.C.M.R.1973). His failure to do so in the case *sub judice* requires reversal.

4. The majority action in effect severely limits, if not totally overrules, the standard enunciated in *United States v. Doctor,* 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956), for appellate evaluation of such argument.