UNITED STATES, Appellee,

v.

Specialist Four Roque FALCON, SSN 547–25–4609, United States Army, Appellant.

SPCM 18009.

U.S. Army Court of Military Review.

29 April 1983.

Colonel William G. Eckhardt, JAGC, Major Lawrence F. Klar, JAGC, and Captain Donna Chapin Maizel, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Captain Thomas E. Booth, JAGC, were on the pleadings for appellee.

Before O'DONNELL, FOREMAN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Judge:

Contrary to his pleas, the appellant was convicted of stealing a blank check, forging and uttering the check and then intentionally inflicting grievous bodily harm on his accomplice by striking him in the head several times with a rock, in violation of Articles 121, 123 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 923 and 928 (1976). His approved sentence provides for a bad-conduct discharge, confinement at hard labor for sixty days and reduction to the lowest enlisted grade.

### The Evidence

On or about 4 December 1981 the appellant took a blank check belonging to Chief Warrant Officer (CW2) Ronald N. Dzierzawic from Dzierzawic's desk. On or about 10 December 1981 the appellant and Private Michael E. Nacker decided to try to cash the check. The appellant made the check payable to Nacker in the amount of $200.00 and forged Mr. Dzierzawic's signature. Nacker endorsed the back of the check. They attempted to cash the check at two banks, but both refused to cash it because it was drawn on an out-of-town bank. The appellant claimed that after the two unsuccessful attempts to cash the check, he abandoned his intent to cash it, and instructed Nacker to destroy it. The appellant made a written confession setting out the above facts.

Nacker testified that the appellant told him to keep the check and to give him half of the proceeds if he was able to cash it. Nacker persuaded a Private First Class Long to co-sign the check. Nacker then cashed the check and spent some of the proceeds, giving nothing to the appellant.

On 21 January 1982 Nacker was questioned about the offenses and he implicated the appellant. At the trial, Nacker testified that at about 1030 hours, 22 February 1982, the appellant asked him to drive him to a field location at Fort Hood to find some brake shoes. Nacker testified that he drove the appellant to a remote area where the appellant attacked him, striking him in the back of the head several times with a rock and inflicting deep cuts on his scalp which required twenty-seven or twenty-eight stitches. Nacker pointed out the site of the alleged assault to military police investigators, who found a fatigue hat inscribed with the name "Falcon" as well as two large rocks containing what appeared to be blood and hair.

There was no dispute that Nacker had been attacked by someone. The only issue was the identity of the attacker. The appellant denied attacking Nacker. He testified that he drove Nacker to two locations on post without incident. He stated that the hat found at the scene of the alleged assault was not his hat.

The appellant's commander testified that he was informed of the incident at about 1110 hours the same day and that he could not find the appellant in the barracks or at his place of duty, but that the appellant did appear at the 1230 formation. A member of the appellant's unit testified that he saw the appellant at noon and that the appellant had his hat with him.

### Sufficiency of the Evidence of Larceny

The appellant contends that the evidence does not support his conviction of larceny because no evidence was presented that the stolen blank check had any value.

We find the assignment of error without merit. A stolen blank check has nominal value, even if it is worthless to the thief. *United States v. Windham*, 15 U.S.C.M.A. 523, 525, 36 C.M.R. 21, 23 (1965); *United States v. Stewart*, 1 M.J. 750 (A.F.C.M.R. 1975).

In this case Mr. Dzierzawic testified that the blank check was not worth anything to him until it was signed. However, since the check was in evidence and properly before the court members, they could infer, using common knowledge, that a blank check has some intrinsic, albeit nominal, value. *See United States v. Frost*, 22 U.S.C.M.A. 233, 235 n. 1, 46 C.M.R. 233, 235 n. 1 (1973) (suggesting that nominal value of a piece of paper may be inferred). Accordingly, we hold that there is sufficient evidence of record in this case to support the court's finding that the blank check had "some value."

### Trial Counsel's Argument

The appellant contends that he was prejudiced by the trial counsel's improper argument on findings. We agree that some of the trial counsel's remarks were improper and that they created a reasonable likelihood of prejudice as to some of the offenses.

The evidence was in conflict regarding the uttering of the forged check as well as the assault on Nacker. Nacker's testimony supported the prosecution and was largely inconsistent with the appellant's exculpatory testimony. Considerable evidence was presented regarding the truthfulness of Nacker and the appellant, as well as evidence of the appellant's peaceable nature. The trial counsel properly argued that Nacker's credibility was enhanced by the fact that his testimony was consistent with parts of the appellant's confession. However, the trial counsel then argued:

> Everything about the confession has been verified by Nacker's testimony. And, to my knowledge, the government—Nacker has never seen that confession by Falcon. He never has. And, so, its all verified

and very credible, in spite of the problems that Nacker might have personally.

▇▇▇ In rebuttal argument on the issue of the appellant's peaceable character, the trial counsel commented,

> Consider also something too. This peacefulness business. There's always a first time. Probably wasn't his first time actually, but there's always a first time for a record anyway and that was it.

We hold that it was improper for the trial counsel to assert personal knowledge of a fact outside the record, i.e., that Nacker had never seen the appellant's confession. Standards for Criminal Justice § 5.9 (2d ed.1980). Likewise, it was improper for the trial counsel to insinuate that there was evidence, not before the court, of other assaults committed by the appellant. *Id.* §§ 5.8(a), 5.9; *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

▇▇▇ Regarding the hat found at the scene of the alleged assault on Nacker which bore the name "Falcon," the trial counsel properly called the court members' attention to the similarities of the printing of the name "Falcon" on the hat and the appellant's printing on a defense exhibit. However the trial counsel went on the argue as follows:

> I felt it was kind of interesting this morning how the defense entered another exhibit showing an unmotivated printed version that Falcon's own name—of what his name looks like when he writes it out in print. I thought it was kind of interesting because while you were in deliberation—while you were in recess, I looked at government exhibit [sic] again just to check and further compare the printing style, and I was surprised at how close they matched. I was really surprised because in my mind, I would have thought it would be more difficult to write on material and cloth and have it come out quite right as it would on a sheet of paper. But, you'll notice how remarkably similar those are.

Later, commenting on the defense evidence of the appellant's peaceful nature, the trial counsel commented:

It seems to me that the accused has been surprising a lot of people lately with respect to both his honesty as well as his aggressiveness and ability to commit crime.

Next, the trial counsel commented on the defense alibi evidence as follows:

But as a matter of fact, that's where the defense's evidence goes wrong. Robles was wrong. It was—he was unsure of the time that—that his records showed, that the defense was admitted into emergency. He kept saying 11 o'clock. He was unsure. And I told him that he was.

Finally, regarding the concept of reasonable doubt, the trial counsel argued as follows:

It's not any doubt, it's not any fanciful doubt that could be raised by the defense and its conjectures and in speculations, unless it's founded upon reason. And on that point, I wish the defense good luck cause [sic] I don't think that they are going to raise it this morning. They haven't so far in trial.

The trial counsel's remarks were improper. A trial counsel should not express his personal opinion regarding the truth or falsity of evidence or the guilt of the accused. Standards for Criminal Justice § 5.8(6) (2d ed. 1980). In this case the trial counsel expressed his personal opinion regarding the similarities of the printing in the hat and the appellant's writing, the unconvincing nature of the evidence of appellant's peaceful nature and the weakness of the defense alibi evidence. In effect the trial counsel, using his training and experience in evaluating evidence, testified, as an expert witness, that he found the government evidence convincing and the defense evidence unworthy of belief. Such remarks tend to

increase the probative force of the evidence counsel has legitimately introduced in support of his case. The possibilities of prejudice are especially to be guarded against where such tactics are employed by prosecutors. They represent the sovereign power of the United States of America in the court-martial arena. Their personal opinions may well provide them unauthorized and improper weapons with which to vanquish the accused and thereby deprive him of a fair trial.

*United States v. Tanksley,* 7 M.J. 573, 577 (A.C.M.R.1979), *aff'd,* 10 M.J. 180 (C.M.A. 1980) (summary disposition).

Having concluded that the trial counsel's arguments were improper, we must test for prejudice. Regarding the larceny of the blank check and the forgery of the check, the evidence against the appellant is overwhelming. Accordingly, we find no prejudice as to those offenses. Regarding the uttering of the forged check and the assault on Nacker, the government's case rests almost entirely on the credibility of Nacker, an admitted accomplice with a reputation for being untruthful. We believe that there is a reasonable likelihood of prejudice as to these offenses.

Although the appellant's confession and the corroborating evidence are sufficient to establish an attempt to utter the check, the uttering on which the specification was based occurred at a different time and place. Consequently the first two attempts to utter the check are not lesser included offenses of the uttering alleged in Specification 2 of Charge II. *See* paragraph 74*b* (2), Manual for Courts-Martial, United States, 1969 (Revised edition).

The findings of guilty of Charge I and its Specification and Specification 1 of Charge II and Charge II are affirmed. The findings of guilty of Specification 2 of Charge II, and Charge III and its Specification are set aside. Specification 2 of Charge II and Charge III and its specification are dismissed. The Court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for thirty days and reduction to the lowest enlisted grade.

Senior Judge O'DONNELL and Judge WERNER concur.