UNITED STATES, Appellee,

v.

Specialist Four Dutch L. STEVENS, 315–84–9618, United States Army, Appellant.

CM 447170.

U.S. Army Court of Military Review.

12 Dec. 1985.

---

For Appellant: Lieutenant Colonel Arthur L. Hunt, JAGC, Captain Bernard P. Ingold, JAGC, Captain Peter D.P. Vint, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Patrick J. Cunningham, JAGC (on brief).

Before MARDEN, PAULEY, and De GIULIO, Appellate Military Judges.

## OPINION OF THE COURT

PAULEY, Judge:

In accordance with his pleas, the appellant was convicted by a military judge sitting as a general court-martial of larceny of approximately one-half pound of the explosive trinitrotoluene (TNT) and wrongful disposition of military property (the TNT), in violation of Articles 121 and 108, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 908, respectively. He was sentenced to a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority approved the sentence but suspended all con-finement in excess of 18 months for 18 months.

### I.

The appellant was assigned duties as an assistant armorer in a unit arms room for an engineer company located at Fort Kobbe, Republic of Panama. On 30 August 1984, Private Tabor, a friend of the appellant, visited the arms room for the purpose of cleaning his assigned individual weapon and, while there, engaged in conversation with the appellant, Specialist Stevens. Among other things, appellant and Tabor reminisced of manufacturing "fire crackers" when they were younger. At approximately 1630 hours when the appellant closed the arms room for the day he wrongfully took a block of TNT weighing approximately one-half pound and the fuse assembly from a practice hand grenade. Apparently the TNT, left over from a recent field exercise, was temporarily stored in the arms room.

Later that same evening the appellant visited Private Tabor in his room and apropos of their previous conversation, they agreed to take the TNT to a local beach and explode it in the ocean as a prank. They walked to a nearby beach but abandoned their plan when they observed other people present in the vicinity. Specialist Stevens then suggested that they explode the TNT in the jungle using a trip wire. The two men then walked to a nearby motor pool and there obtained a roll of wire from the guard on duty. Near the entrance to the beach they attached the TNT to a roadside traffic sign with the wire, placed the grenade fuse inside the TNT container, attached a wire to the ring of the fuse and stretched the wire across the road, attaching the end to a fence on that side of the road. They returned the remainder of the wire to the motor pool and retired to their barracks to await the explosion. Fortunately, it was not forthcoming. At approximately 2100 hours that evening, a vehicle drove through the wire and detonated the grenade fuse. The driver of the vehicle observed in his rear view mirror a

bright flash and heard a sound "like a fire cracker." Although the grenade fuse was activated, the TNT did not explode because the fuse was not powerful enough to detonate that type of explosive.

## II.

The government presented testimony by Private Tabor and the guard at the motor pool who related what they knew about the incident. Next the government called the armorer who had replaced the appellant in the arms room and he testified, over defense objection, as to safety standards involving the use of TNT for training purposes. After presentation of defense evidence, the government counsel presented a brief but well-reasoned argument, stating that the appellant violated a trust by stealing the explosive and created a dangerous situation when he attempted to detonate the TNT. A pertinent portion of that argument is as follows:

> [The appellant] ... set up a device on a road which is the only entrance to a public beach. It is a road frequented by pedestrians, civilians, military personnel, bicyclists and so forth. His intent was to explode that military explosive and if he had succeeded in his attempt, a tragedy could have occurred, but it was only the fortuitous circumstances which he was not aware of that prevented such an occurrence.

After announcing sentence, the military judge addressed the appellant in an apparent effort to explain his sentence. Some of those remarks, which provide the basis for appellant's assigned error,[1] are as follows:

> MJ: Now, I have a couple of things I'd like to say to you before the court adjourns, Specialist Stevens. Now, I know you were hoping to get a lighter sentence and I would have, frankly, would have liked to have given you a lighter sentence and the reason that I gave you the sentence that I did was that I felt that it was my duty to do that. Let me

explain to you why and tell you how I see the situation. Contrary to what Captain Boivin argued in your behalf, it is important what might have happened. That's the way we judge the consequences of what we do, is what might happen. That's the way we know it's a dumb thing to play with explosives, because of what might happen, and it could happen. You seem to be so sure that what you did was safe, but how could you know that five seconds after a car had rolled through your trip wire, there wouldn't be a pedestrian walking right by that sign, or somebody on a bicycle? How could you be sure that somebody wouldn't be riding in that car with a heart condition and have a heart attack when that thing went off? That's what might have happened. I'll tell you what would have happened if the thing had gone up. I'll tell you two things [that] would have happened.

Number one is Americans all over the Isthmus would have thought that it was a terrorist act, and they would have been scared to death. And it would have gone on for weeks and maybe for months, or until people found out that it was just a prank. And still there'd be people that didn't believe it, who thought that there was some mad bomber out there and that it was going to be their house or their car blown up next. It would have scared people, I mean everybody would have been terrified. How would you like it if somebody did that in your hometown? I don't think you would.

Number two, dissident elements in the host country here would have seized upon this as an opportunity to discredit the United States. They'd have said, "Soldiers can't be trusted to be in our country because they're liable to blow it up or destroy our country." And they would have used that as an opportunity to protest the presence of the United States in their country.

---

1. Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), the appellant also alleges that the military judge's comments constituted error.

### III.

The appellant urges that these remarks of the military judge indicate that he erred by sentencing the appellant "based on improper speculation as to the potential effects of the offenses which could not possibly have occurred." More particularly, the appellant alleges that the military judge improperly speculated as to what might have happened if the TNT had exploded, even though it had been stipulated that the TNT could not have exploded and that he improperly speculated as to the effect of a possible explosion on relations between the United States and Panama.

 It is axiomatic that counsel may argue and the sentencing authority may consider any reasonable inference from the evidence admitted at trial. *United States v. Doctor,* 21 C.M.R. 252 (C.M.A.1956); *United States v. Tanksley,* 7 M.J. 573 (A.C. M.R.1979), *aff'd,* 10 M.J. 180 (C.M.A.1980). In this case, the trial counsel was without fault in that regard. He argued that the appellant had intended that the TNT explode and, if it had, he implied that serious injury might have occurred to passersby. Finally, he argued, in effect, that only the appellant's ineptitude prevented such a tragedy. In other words, the trial counsel urged that the appellant be sentenced based on his *intent,* notwithstanding the fact that the TNT did not explode and indeed was perhaps incapable of detonation. We believe the quoted portion of trial counsel's argument is illustrative of the outer limits of reasonable inferences to be drawn from the facts of appellant's case. Accordingly, we likewise find the trial judge's remarks concerning possible injury to passersby to be legally inoffensive and properly considered by him in arriving at a sentence.[2] Common sense would tell the trier of fact that a one-half pound block of TNT, even with an inadequate fuse for detonation, when placed on a road sign near a roadway is an inherently dangerous situation. In any case, the appellant stipulated that the stolen TNT was "a dangerous explosive, capable of causing death and serious injury to unprotected personnel in close proximity to its detonation." The appellant obviously intended to detonate the explosive. Given these facts, it is not unrealistic to conclude that notwithstanding the inadequate fuse used by the appellant, it would be *possible* for an explosion to occur. We are not persuaded by appellant's argument that because it was stipulated that the explosive, as contrived by the appellant, was incapable of detonation, the trial counsel may not argue, and the sentencing authority may not consider, the possibility of an explosion. Reasonable inferences may then be drawn from the consideration of such a possibility. The trier of fact is bound to consider only evidence of record and reasonable inferences drawn from that evidence. *United States v. Clifton,* 15 M.J. 26 (C.M.A.1983). We find no error in the consideration of the possibility of an explosion, notwithstanding the stipulation of fact.

### IV.

We do find error, however, in the trial judge's two enumerated instances of "what would have happened" if an explosion had occurred. As to the first situation, it is possible, of course, that members of the American community in Panama might have assumed that an explosion was the work of terrorists. However, the military judge went too far in his further speculation that Americans would have been terrified "for weeks and maybe for months" by the fear of a "mad bomber." Such conjecture constitutes error. We find this speculation on the part of the trial judge to be improper because it is beyond the outer limits of reasonable inferences to be drawn from the evidence presented at trial. *United States v. Clifton,* 15 M.J. 26; *United States v. Bouie,* 26 C.M.R. 8 (C.M.A.1958).

---

**2.** We do consider the trial judge's example of the possibility of a passenger in a passing automobile having a heart attack upon detonation of the explosive to be somewhat strained. Were this to be argument by government counsel, it would certainly test the limits of permissible comment. *See United States v. Campbell,* 8 M.J. 848 (C.G.C.M.R.1980).

The more grievous error results when the trial judge, in his second cited instance, speculates as to the effect of a possible explosion on relations between the United States and the Republic of Panama. The military judge's fear was that "dissident elements" would have used this explosion as an opportunity to discredit the United States and to protest its presence in their country.

It is well established in military jurisprudence that an attempt to lure the trier of fact into basing its verdict upon the probable effect of the outcome of the court-martial on relations between the military and civilian communities will constitute prejudicial error. *United States v. Cook*, 28 C.M.R. 323 (C.M.A.1959); *United States v. Brennan*, 27 C.M.R. 183 (C.M.A.1959); *United States v. Mamaluy*, 27 C.M.R. 176 (C.M.A.1959). The Court of Military Appeals has generally condemned arguments that place undue emphasis upon relations between the United States and foreign governments. *United States v. Boberg*, 38 C.M.R. 199 (C.M.A.1968); *United States v. Cook*, 28 C.M.R. 323. Moreover, the absence of objection by counsel or the fact that such argument relates to sentence rather than findings will not alter such judicial condemnation. *See United States v. Weaver*, 32 C.M.R. 147 (C.M.A.1962); *United States v. Allen*, 29 C.M.R. 355 (C.M.A.1960). On the other hand, where this kind of offensive argument is directed to a military judge acting as a trier of fact, this Court has not granted relief. *See e.g., United States v. Sumner*, 43 C.M.R. 475 (A.C.M.R.1970). In *United States v. Razor*, 41 C.M.R. 708 (A.C.M.R.), *aff'd* 42 C.M.R. 172 (C.M.A.1970), Judge Nemrow noted that "the military judge is presumed to know, when trying a case alone, what he can consider and to consider only that which is proper when adjudging the sentence, at least absent a showing to the contrary." In this case, the contrary showing is clearly evidenced by the admission of the trial judge that he used these improper inferences and conclusions in arriving at a sentence. We hold that error results when a trial judge acknowiedges consideration of matters in arriving at a sentence where such matters, if presented before court members by counsel during argument, would have constituted prejudicial error.

## V.

Left for our consideration is the effect of this error upon the sentence of the appellant. We believe it to be considerable. The trial judge, in his remarks after sentencing, admits that he wanted to give the appellant a "lighter sentence" but was unable to do that; presumably because of the improper inferences drawn from the evidence. A reasonable interpretation of the trial judge's remarks, together with a comparison of the nature of the offenses and the severity of the sentence, make it clear that his consideration of the improper inferences under discussion had a profound effect on the sentence that he adjudged. We will order a rehearing on the sentence in this case.

We have considered the remaining assignment of error and the additional issue personally raised by appellant and find them to be without merit.

The findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge MARDEN and Judge De GIULIO concur.