# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

—————————————

## No. 201600130

—————————————

## UNITED STATES OF AMERICA
Appellee

v.

## RUSSELL A. COBLE
Lieutenant (O-3), U.S. Navy
Appellant

—————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Robert J. Crow, JAGC, USN.
Convening Authority: Commander, Navy Region Southeast,
Jacksonville, Florida
Staff Judge Advocate's Recommendation: Commander Nell O. Evans,
JAGC, USN.
For Appellant: James S. Trieschmann, Jr., Esq.; Lieutenant
Christopher C. McMahon, JAGC, USN.
For Appellee: Lieutenant Commander Jeremy R. Brooks, JAGC,
USN; Lieutenant Robert J. Miller, JAGC, USN.

—————————————

Decided 23 February 2017

—————————————

Before CAMPBELL, HUTCHISON, and JONES, *Appellate Military
Judges*

—————————————

**This opinion does not serve as binding precedent, but may be cited
as persuasive authority under NMCCA Rule of Practice and
Procedure 18.2.**

—————————————

HUTCHISON, Judge:

At a contested general court-martial, a panel of officers found the
appellant guilty of one specification of violating a lawful general order, one
specification of making a false official statement, and one specification of

sexual assault, in violation of Articles 92, 107, and 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, and 920 (2012). The convening authority (CA) approved the adjudged sentence of a dismissal and three years' confinement.

The appellant asserts four assignments of error (AOEs), one of which was recently resolved by our superior court,[1] and another which we find wholly without merit.[2] The remaining AOEs are: (1) the trial counsel committed prosecutorial misconduct by repeatedly making objectionable arguments in his closing statements; and (2) the military judge erred in admitting opinion testimony from Commander (CDR) W that the appellant was untruthful. Having carefully considered the record of trial and the parties' submissions, we conclude the findings and sentence are correct in law and fact and find no error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In September 2014, United States Coast Guard Ensign (ENS) H, a trainee pilot, reported to flight training at NAS Whiting Field, Florida. She met the appellant, an instructor pilot, while conducting her aircraft egress training. After learning that ENS H had served with a friend of his who was also a Coast Guard pilot, the appellant requested and was granted permission to serve as the "on-wing" instructor pilot for ENS H.[3] While serving as the "on-wing," the appellant and ENS H had sexually charged conversations that

---

[1] "IT WAS PLAIN ERROR FOR THE MILITARY JUDGE TO INSTRUCT THE MEMBERS, 'IF, BASED ON YOUR CONSIDERATION OF THE EVIDENCE, YOU ARE FIRMLY CONVINCED THAT THE ACCUSED IS GUILTY OF THE CRIME CHARGED, YOU MUST FIND HIM GUILTY.'" Appellant's Brief of 12 Sep 2016, at 1. The Court of Appeals for the Armed Forces found no error in the use of the same challenged instruction in *United States v. McClour*, __ M.J. __ , No. 16-0455, 2017 CAAF LEXIS 51 (C.A.A.F. Jan. 24, 2017), and in accordance with that holding, we summarily reject the appellant's supplemental AOE here. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992); *see also United States v. Rendon*, 75 M.J. 908, 916-17 (N-M. Ct. Crim. App. 2016), *rev. denied.* __ M.J. __ (C.A.A.F. Feb. 14, 2017).

[2] "CDR [W]'S PERSONAL PREJUDICE AGAINST LT COBLE COMPOUNDED THE PREJUDICIAL EFFECT OF THE PROSECUTION'S IMPROPER ARGUMENTS." Appellant's Brief at 2. This error was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). "[C]ross-examination can be expected to expose" an opinion witness' "feelings of personal hostility towards the principal witness." *See United States v. Watson*, 669 F.2d 1374, 1382 (11th Cir. 1982) (citations and internal quotation marks omitted).

[3] Record at 358-59. An "on-wing" instructor pilot accompanies a trainee pilot through the roughly ten to twelve training flights that are required before the trainee can fly solo.

eventually escalated into phone sex and flirtatious behavior. While on a detachment to New Mexico, in January 2015, the appellant accompanied ENS H on her last training flight, replacing another instructor.[4] During the flight, ENS H and the appellant had another sexually charged conversation, and after landing, ENS H told the appellant they were "never having sex," to which the appellant replied, "I know."[5]

After both returned to their separate (but nearby) hotel billeting, the appellant, ENS H, and three other instructors went to dinner, where ENS H and the appellant consumed alcohol. Afterwards, the group returned to the lobby of the instructors' hotel and continued to drink. While seated next to ENS H, the appellant surreptitiously placed his room key on the table adjacent to where ENS H was seated. The appellant then, trying to conceal his invitation from the other instructors, texted ENS H and encouraged her to join him in his room. ENS H took the room key but responded to the text and declined the appellant's request.[6] Instead, ENS H returned to her room and changed into "underwear, sweatpants and a sports bra."[7] Shortly after ENS H departed, and while the appellant remained in the lobby of his hotel, he was informed by a hotel employee that there was an incoming telephone call for him on the hotel's phone. The appellant testified that the phone call came from ENS H; the employee that answered the phone testified that the caller identified herself as the appellant's wife, but noticed that the Caller ID indicated the call came from ENS H's hotel. ENS H testified that she did not remember making any call. After the appellant received the phone call he went directly to ENS H's room.

The appellant knocked on ENS H's door and kissed her when she opened it. She kissed him back, then, "realized what was going on, and . . . pushed him off," saying "we can't do this."[8] Though "hazy," ENS H then recalls the appellant being on top of her, holding her wrists down, and "squeezing them tightly," while "trying to insert his penis into [her] vagina"; while she said, "[n]o," the appellant persisted and started "laughing," saying "I didn't know

---

[4] *Id.* at 384. ENS H was originally scheduled to complete her last flight with another instructor, but ENS H spoke to the scheduling officer and specifically requested the appellant, since "he likes to take his on-wings out on their last flight[.]" *Id.*

[5] *Id.* at 386.

[6] *Id.* at 428-429. ENS H responded to the appellant's text with "you're nuts" and "what about your neighbor," referencing the fact that the appellant's commanding officer was in a room adjacent to the appellant's.

[7] *Id.* at 393.

[8] *Id.* at 394.

how strong you were," and "[y]ou're such a tease."[9] Finally, ENS H "laid there, and . . . let him put his penis inside [her]" because she "couldn't fight him back anymore."[10] The next morning, ENS H made restricted reports of sexual assault to a Sexual Assault Response Coordinator and the squadron flight surgeon and went on emergency leave.

In February 2015, ENS H made a pretext phone call to the appellant which was recorded by Naval Criminal Investigative Service (NCIS).[11] During the call the appellant acknowledged that ENS H told him "no" and "stop" and was squirming, but reiterated that he thought she was being "playful."[12] The appellant asserted that at no time did he force ENS H, reminding her that "when you would say like, '[s]top,' I was like, '[h]ey if you want me to go, just—just tell me.'"[13] When ENS H asked the appellant why he pushed himself on her and why he held her wrists after "[she] kept saying '[n]o' and to 'think about [their] careers, think about [their] families,'"[14] the appellant responded:

> [ENS H], my story is not going to change . . . [I]t was a playful thing and I did say, "[h]ey if you want me to go, tell me," but you never once said . . . "[o]kay, I want you to leave."[15]

Finally, when asked by ENS H why he did not stop that night, the appellant answered, "I was under the impression that it was—that we were joking around and that it was like that you didn't want to, but you wanted to, and that's the impression I was on . . . ."[16]

---

[9] *Id.* at 395.

[10] *Id.* at 398.

[11] Prosecution Exhibit 6. [Transcript of call is contained in PE 7].

[12] PE 7 at 7. During the call with the appellant, ENS H explained that she was "look[ing] into [his] eyes" and saying "[n]o," and that she was "not joking;" she reminded the appellant that he simply responded by saying "[w]ow you're so strong," and by holding her wrists and "squeeze[ing] them really tightly[.]" In response, the appellant answered "[w]ell, it's [be]cause I thought we were playing around, you know . . . and that's my honest to God" truth, and insisted that he had offered to leave if she wanted him to.

[13] *Id.* at 5. The appellant further explained to ENS H "[t]here was never one time that I was like literally. . . forcefully forcing myself on you, it was more of a playful whatever, and you were like, "[n]o, no," but I was like, "[l]ook, if you want me to go, I will go. . . .there was never a time that I was no—like no kidding, like okay, this is going to happen type thing, it was just like a playful whatever, you know[.]"

[14] *Id.* at 8.

[15] *Id.* at 9.

[16] *Id.* at 19.

Two days after the pretext telephone call, NCIS interviewed the appellant. He denied going to her hotel room and having sex with ENS H. The appellant repeated those denials even after the NCIS agent advised him that lying to an NCIS agent was a crime.

At trial, over defense objection,[17] CDR W, the appellant's Commanding Officer (CO) at the time of the allegations, testified as a government rebuttal witness that in his opinion, the appellant's "character for truthfulness" was "[b]elow [his] expectations."[18]

During the government's closing argument, the trial counsel (TC) made a number of arguments that the appellant now claims were improper. On four occasions, trial defense counsel (TDC) raised a timely objection to TC's argument, and the military judge sustained each objection.[19] Other times, however, TDC raised no objections, and the appellant alleges error for the first time on appeal.[20]

---

[17] *Id.* at 624. In overruling the objection, the military judge explained:

> I'm going to permit the testimony. I mean I think it's a close call based on the foundational nature, and I find it a little bit heightened in that it's coming from a former Commanding Officer in this case. However, I also find that, as the government just argued, it's apparent that the Commander has well thought out his rationale that forms his opinion, and defense, I think you did a very good job cross-examining and/or impeaching that opinion on the specific instances if you choose to go there, that's obviously a defense choice. The government cannot go there unless the defense chooses to do so, so based upon his interactions, I do find that he does have a sufficient foundation, even though based primarily upon two incidents which again I think he'll concede that he's not positive they were actually lies, but I'm going to permit the testimony. *Id.*

[18] *Id.* at 627.

[19] *Id.* at 669 (objecting to trial counsel's "personal attacks"); *id.* (objecting to trial counsel's characterization of CDR W's testimony); *id.* at 688 (objecting to trial counsel's argument that the military judge did not instruct the members on any "magic words defense"); *id.* at 703-04 (objecting to trial counsel's statement, "[i]f you don't believe [the appellant], they've got a problem," as an improper burden shift).

[20] Appellant's Brief at 16 (alleging trial counsel personally vouched for the credibility of witnesses when he "offered substantive commentary on the truth or falsity of the evidence," and improperly inserted himself into the proceedings by using personal pronouns); *id.* at 18 (alleging as improper trial counsel's argument that the appellant "clearly cannot deal with the truth about himself"); *id.* (alleging trial counsel intentionally "inflame[d] the passions of the jury" by mischaracterizing testimony regarding a second sexual encounter between the appellant and ENS H). We have reviewed these instances raised by the appellant for the first time on appeal, and find no plain or obvious error. *See United States v. Tanksley*, 7 M.J. 573,

## II. DISCUSSION

## A. Allegations of prosecutorial misconduct

"Prosecutorial misconduct occurs when trial counsel overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (citations and internal quotation marks omitted). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)).

Prosecutorial misconduct in the form of improper argument is a question of law reviewed *de novo*. *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (citing *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011). When a proper objection is made at trial, we will review those comments for prejudicial error. *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citing Art. 59, UCMJ). "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). When there is no objection, we review for plain error. *United States v. Rodriguez*, 60 M.J. 87, 88 (C.A.A.F. 2004). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Fletcher*, 62 M.J. at 179 (citation omitted). Thus, regardless of whether an objection was made at trial, if prosecutorial misconduct is found, we cannot reverse without a showing of prejudice to the appellant from "the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial." *Id.* at 184 (citation omitted). To determine whether the TC's comments, taken as a whole, were "so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone[,]" we consider: (1) the severity of the misconduct, (2) any curative measures taken, and (3) the strength of the government's case. *Id.*

> Indicators of severity include (1) the raw numbers—the instances of misconduct as compared to the overall length of the argument, (2) whether the misconduct was confined to the

579 (A.C.M.R. 1979), *aff'd*, 10 M.J. 180 (C.M.A. 1980) (finding "that the trial counsel's" use of "personal pronoun[s]" was "within the bounds of propriety," and that his "alleged expressions of personal opinion as to the guilt of the appellant" were "merely deductions from the evidence properly adduced at trial and incorporated in his argument that the Government had met its burden of proof").

trial counsel's rebuttal or spread throughout the findings argument or the case as a whole; (3) the length of the trial; (4) the length of the panel's deliberations, and (5) whether the trial counsel abided by any rulings from the military judge."

*Id.* (citation omitted).

Citing several instances in the record, the appellant argues that the trial counsel committed prosecutorial misconduct during his closing and rebuttal arguments by personally vouching for the credibility of witnesses, making disparaging remarks about the appellant, arguing facts not in evidence, improperly instructing the members, and shifting the burden to the appellant.[21]

We are not compelled to address every comment of TC here, because, as noted *supra*, "[e]ven were we to conclude that prosecutorial misconduct occurred, relief is merited only if that misconduct 'actually impacted on a substantial right of an accused (*i.e.,* resulted in prejudice).'" *United States v. Pabelona*, __ M.J. __, No. 16-0214, 2017 CAAF LEXIS 58, at *5 (C.A.A.F. Feb. 1, 2017) (quoting *Fletcher*, 62 M.J. at 178). Here, we find no such material prejudice to the appellant's substantial right to a fair trial.

*1. Severity of misconduct.* The severity of the TC's actions was low and did not permeate the trial. Rather, the TC's statements cited by the appellant are isolated comments within a summation and rebuttal totaling over 30 pages. Moreover, to the extent trial counsel's argument was improper—if at all—it resulted from his inartful attempt to "forcefully assert reasonable inferences from the evidence." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). For instance, in attempting to draw a comparison between telling the truth regarding trivial or unimportant matters and telling the truth when there are consequences, the TC stated, "even pathological liars probably tell the truth most of the time when it doesn't matter."[22] While the appellant alleges that this was a personal attack, the military judge sustained the objection, reminding the TC to "keep it to evidence in the case."[23] The members deliberated for approximately 90 minutes on essentially a single specification of sexual assault, where the only issue substantially contested was whether ENS H consented to the sexual encounter with the appellant.[24] In response to

---

[21] Appellant's Brief at 16-21.

[22] Record at 669.

[23] *Id.*

[24] Although the appellant pleaded not guilty to the Articles 92 and 107, UCMJ, offenses, trial defense counsel conceded the appellant's guilt in his opening statement and closing argument, deciding instead to focus on the more serious Article 120, UCMJ charge.

defense objections, the military judge corrected the trial counsel—who abided by the military judge's direction—and provided curative instructions.

*2. Curative measures taken.* The military judge sustained each of TDC's objections and issued a curative instruction where appropriate, specifically directing the members to disregard portions of TC's argument.[25] Members are presumed to have complied with a military judge's curative instructions absent evidence to the contrary. *United States v. Rushatz*, 31 M.J. 450, 456 (C.M.A. 1990). Besides the curative instructions, the military judge instructed the members that the arguments of counsel are not evidence, that they must base their decision on the evidence as they remember it, and to disregard any comments of counsel that conflict with the judge's instructions,[26] and reminded the members of their exclusive duty to determine witness credibility.[27] Therefore, any concern that the TC's arguments improperly influenced the members was adequately addressed by the military judge. *See United States v. Tanksley*, 7 M.J. 573, 579 (A.C.M.R. 1979), *aff'd*, 10 M.J. 180 (C.A.A.F. 1980) ("[A]ny possible ambiguities in the [TC]'s argument that may possibly have been construed as personal opinion were adequately offset by the trial judge's instructions on findings to the effect that counsel's arguments are not evidence and the court members are not to give them any further credence or attach to them any more importance than the court members' own recollections of the evidence compel.").

*3. Strength of the government's case.* The government's case, although primarily based upon the testimony of ENS H, was reasonably strong when taken as a whole. ENS H reported the assault the same day it occurred and testified credibly and consistently. The appellant, on the other hand, initially corroborated many of the details surrounding the sexual assault during the pretext phone call, then wholly denied any sexual encounter when interrogated.

Given this evidence, we are confident in the members' ability to adhere to the military judge's instructions and to put counsel's arguments in their proper context. We are equally confident that the members convicted the appellant on the basis of the evidence alone.

---

[25] *E.g.,* Record at 692; *id.* at 703-04 ("MJ: . . . No shifting of the burden of proof. Disregard the last statement of trial counsel."). *See United States v. Mason*, 59 M.J. 416, 424-25 (C.A.A.F. 2004) (holding that an isolated comment "improperly impl[ying] that the burden of proof had shifted to" the appellant, was harmless beyond a reasonable doubt because the military judge had properly instructed the members that the burden of proof was on the government).

[26] *Id.* at 663.

[27] *Id.* at 658.

**B. Testimony of CDR W**

The appellant avers that CDR W's opinion testimony both "lacked sufficient foundation" and that its "probative value was substantially outweigh[ed] by its highly prejudicial effect."[28] We disagree as to both claims.

*1. Foundation*

We review the decision to admit opinion testimony for an abuse of discretion. *United States v. Goldwire*, 55 M.J. 139, 142 (C.A.A.F. 2001). Under MILITARY RULE OF EVIDENCE 608(a), SUPPLEMENT FOR THE MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), "[a] witness's credibility may be attacked or supported by . . . testimony in the form of an opinion about that character." For a witness "to lay a proper foundation for opinion evidence, the proponent" need show only "that the character witness personally knows the witness and is acquainted with the witness well enough to have had an opportunity to form an opinion of the witness' character for truthfulness." *United States v. Toro*, 37 M.J. 313, 317 (C.M.A. 1993).[29] Foundation does not exist where a witness' opinion is "no more than a conclusory observation" or "bare assertion." *United States v. Turning Bear*, 357 F.3d 730, 734 (8th Cir. 2004) (citations and internal quotation marks omitted). This typically excludes the opinion of someone who never met the subject witness,[30] or an opinion based on just one act.[31]

Here, CDR W testified to *personally* knowing the appellant since becoming the squadron's executive officer (XO) in June of 2013; that, he remained the appellant's XO and then later CO until relinquishing command in October 2015; that he *saw* the appellant "three to four times throughout

---

[28] Appellant's Brief at 24.

[29] *See Goldwire*, 55 M.J. at 144-45 (finding no abuse of discretion in the admission of a first sergeant's opinion as to Goldwire's truthfulness, because he had seen the "appellant numerous times, both before and after the date of the offense, and was personally involved with . . . disciplinary actions against [the] appellant" for uncharged misconduct); *United States v. Turning Bear*, 357 F.3d 730, 734 (8th Cir. 2004) (finding daily contact over four to six months to be sufficient foundation for a witness to offer an opinion on the subject witnesses' character for truthfulness).

[30] S*ee United States v. Whitmore*, 359 F.3d 609, 617-18 (D.C. Cir. 2004) (excluding the opinion of a reporter that a law enforcement officer was untruthful, where the reporter had never met the law enforcement officer).

[31] *See United States v. McElhaney*, 54 M.J. 120, 127 (C.A.A.F. 2000) (upholding the military judge's decision to exclude a witness' testimony on the "victim's character for untruthfulness" based on an allegedly false rape allegation, because witness had "insufficient foundation for an opinion as to [victim's] truthfulness").

the course of a normal work week;" and that he supervised the appellant's collateral duty of ground safety officer.[32]

Prior to CDR W's testimony, the TDC objected on the grounds of foundation. In an Article 39(a), UCMJ, session, CDR W stated his negative opinion of the appellant's character for truthfulness stemmed from two aircraft safety issues—use of unauthorized gear in the aircraft and a hard landing where the tail of the aircraft struck the ground—where CDR W believed the appellant was less than truthful in explaining the incidents. In neither instance was CDR W sure that the appellant had lied to him.[33] Even if, as the appellant claims, these two instances did not "articulate a concrete example of why [CDR W] thought [the appellant] was untruthful,"[34] the nature and quality of these two specific acts does not determine whether CDR W meets the foundational requirements to offer an opinion.[35] Rather, the fact that CDR W's testimony might have been based solely on these two incidents goes to the weight such opinion evidence should be given, not to its admissibility.[36] After all, "cross-examination can be expected . . . to reveal reliance" of the opinion witness "on isolated or irrelevant instances of misconduct or the existence of feelings of personal hostility towards the principal witness," or to "expose defects of lack of familiarity." *United States v. Watson*, 669 F.2d 1374, 1382 (11th Cir. 1982).

Given that CDR W personally knew the appellant, saw him three to four times per week for over two years, served as both his XO and CO, and directly supervised his collateral duty performance, the military judge did not abuse his discretion in finding adequate foundation for CDR W to give opinion testimony.

---

[32] Record at 524, 607-08, 613.

[33] *Id.* at 614 ("I don't know whether he used it in flight or not . . . ."); *id.* at 610 (noting that the appellant's description of the events leading up to the tail strike landing "[wa]s possible").

[34] Appellant's Brief at 28.

[35] *See Fitzgerald v. Stanley Roberts, Inc.*, 895 A.2d 405, 421-22 (N.J. 2006) (noting that although the opinion witness "may have considered" specific "instances of [the subject witness'] misconduct" in formulating an opinion on the subject witness' character for truthfulness, this "d[id] not render the . . . opinion . . . evidence inadmissible").

[36] *See Goldwire*, 55 M.J. at 141 (agreeing with military judge's admission of a first sergeant's opinion testimony, formed from a single incident of dishonesty, where the military judge instructed the members to "consider that fact in determining the weight you'll accord [his] opinion.").

*2. MIL. R. EVID. 403*

Even if a witness has the requisite foundation to offer an opinion on the subject witness' character for truthfulness, the opinion testimony is still subject to MIL. R. EVID. 403.[37] "The military judge may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." MIL. R. EVID. 403 (emphasis added). The MIL. R. EVID. 403 balancing test "is a rule of inclusion." *United States v. Banker*, 60 M.J. 216, 223 (C.A.A.F. 2004). "[A] presumption of admissibility exists[,] since the burden is on the opponent to show why the evidence is inadmissible." *Id.*

Here, TDC objected to CDR W's opinion testimony not only on foundational grounds,[38] but also because it was "cumulative evidence and a waste of the members' time."[39] "When a military judge conducts a proper balancing test under MIL. R. EVID. 403, the ruling will not be overturned unless there is a clear abuse of discretion." *United States v. Manns,* 54 M.J. 164, 166 (C.A.A.F. 2000) (citation and internal quotation marks omitted). However, appellate courts give "military judges less deference if they fail to articulate their balancing analysis on the record, and no deference if they fail to conduct the Rule 403 balancing[.]" *Id.* (citation omitted).

Since the military judge's ruling here did not directly address the MIL. R. EVID. 403 aspects of trial defense counsel's objection,[40] we will examine the

---

[37] *See United States v. Luce,* 17 M.J. 754, 756 (A.C.M.R. 1984) (agreeing with a military judge's determination to exclude testimony regarding a witness' truthfulness potentially "admissible in rebuttal under [MIL. R. EVID.] 608(a)," because it was "of minimal probative value" under "Mil. R. Evid. 403").

[38] Record at 604-05 ("DC: . . . . We don't believe [CDR W] has a strong foundation to give an opinion of character for untruthfulness . . . ."); *Id.* at 619 ("DC: . . .We[]. . . retain our objection. . . I just don't believe we have the foundation.").

[39] *Id.* at 623 ("DC: . . . [W]e don't think this witness adds anything. . . . [T]he defense has already acknowledged that [the appellant] did lie so . . . we just find this is kind of *cumulative evidence and a waste of the members' time*.") (emphasis added). Accordingly, we do not agree with the appellee's contention that the appellant's "[f]ailure to object to the admission of the evidence at trial under MIL. R. EVID. 403 forfeit[ed] appellate review of the issue absent plain error." Appellee's Brief of 12 Dec 2016 at 39 (citation omitted).

[40] *See supra*, note 17. The military judge may have alluded to one of the MIL. R. EVID. 403 factors in his ruling. *See* Record at 624 ("I'm going to permit the testimony. I mean I think it's a close call based on the foundational nature, and *I find it a little bit heightened* in that it's coming from a former Commanding Officer in this case.") (emphasis added). "It," may be a reference to the potential for unfair prejudice, but the reference is too equivocal to receive deference under *Manns*.

record ourselves.[41] The appellant argues that "the strength of proof" or probative value "underlying [CDR W's] testimony was minimal," compared to "the highly prejudicial influence the testimony of an accused's commander is likely to have over the members."[42] We disagree. After the appellant testified to a different version of events than ENS H, evidence regarding his character for truthfulness was both relevant and highly probative. *See United States v. Stavely*, 33 M.J. 92, 94 (C.M.A. 1991) (noting that evidence directly probative of a witness's truthfulness is always relevant to the issue of credibility). On the other hand, we have no concerns that CDR W's opinion was "cumulative evidence."[43] Rather, as TC argued, the appellant's character for truthfulness and the "one specific lie" to NCIS, are "two different things" which are not cumulative.[44] Nor was CDR W's testimony "a waste of the members' time."[45] He testified briefly in rebuttal, solely on his opinion of the appellant's character for truthfulness. Finally, the appellant has cited no authority—and we have found none—to support his contention that CDR W's opinion testimony, by virtue of his position alone, was unfairly prejudicial. Consequently, we hold that the probative value of CDR W's opinion testimony was not substantially outweighed by the danger of unfair prejudice.

Even assuming *arguendo* that the probative value of CDR W's testimony was substantially outweighed by the danger of unfair prejudice, or a waste of time, or cumulative, we find the admission of his opinion testimony harmless. Where evidence is erroneously admitted, we traditionally evaluate prejudice "by weighing (1) the strength of the [g]overnment's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Byrd*, 60 M.J. 4, 10 (C.A.A.F. 2004) (citation and internal quotation marks omitted). "The burden of demonstrating harmlessness rests with the Government." *Id.* (citation omitted) (finding that the government "easily carrie[d] this burden" to show that the erroneous admission of lay opinion testimony on the meaning of past

---

[41] *Manns,* 54 M.J. at 166; s*ee also Gov't of the V.I. v. Archibald*, 987 F.2d 180, 186 (3rd Cir. 1993) ("Where . . . the trial judge fails to perform the required balancing and to explain the grounds for denying a Rule 403 objection, we may undertake to examine the record ourselves[.]") (citation omitted).

[42] Appellant's Brief at 28. We note that evidence does not contravene MIL. R. EVID. 403 merely because it is *highly* prejudicial, it must be *unfairly* prejudicial. *See United States v. Abel*, 469 U.S. 45, 54-55 (1984) (finding "no abuse of discretion under Rule 403 in admitting" testimony about Abel's gang affiliations under instructions which "did not prevent *all* prejudice" to him, as this "did not unduly prejudice" Abel).

[43] Record at 623.

[44] *Id.* at 622.

[45] *Id.* at 623.

statements by the appellant was harmless); *see also United States v. Baumann*, 54 M.J. 100, 105 (C.A.A.F. 2000) (finding no material prejudice to the appellant's substantial rights from the admission of evidence contrary to MIL. R. EVID. 403 where "the prosecution presented an overwhelming case based on the unequivocal testimony of the victim, which was substantially corroborated by the appellant's pretrial statement acknowledging the occurrence of most of the charged acts").

Opinion evidence from CDR W was material; as noted *supra*, it was the only testimony he offered to the members and was admitted in the government's rebuttal case after the appellant testified.[46] However, CDR W's opinion testimony was not a focal point of the case. During the government's lengthy closing argument, TC devoted only a few sentences to CDR W's testimony.[47] In the larger context of the government's case, CDR W's opinion testimony concerning the appellant's character for truthfulness was far less significant than other evidence produced at trial. Moreover, the government's case was strong relative to the defense case. ENS H reported that the appellant had sexually assaulted her the same day as the sexual encounter, and she testified consistently and credibly to the appellant's actions of holding her wrists and having sexual intercourse with her after she said "no." The appellant's defense that the sex was consensual (and his credibility), was undermined by his denial to the NCIS agent that he had sex with ENS H, as well as by the recorded, pretext phone call with ENS H in which the appellant failed to deny most of the details later raised by ENS H at trial. As in *Baumann*, the appellant acceded to most of the complaining witness' testimony regarding the conduct at issue: the appellant acknowledged ENS H had resisted him, that she was "squir[ming]—you know, like messing around" while he had sex with her, notwithstanding his unreasonable assumption she was "playing."[48]

---

[46] *Cf. Byrd*, 60 M.J. at 10 (noting that the witness' "inadmissible testimony" on the meaning of past statements by the appellant "was of limited materiality," as "[o]ther aspects of her testimony concerning Appellant's admissions and a request from Appellant to destroy evidence were, if believed, far more damaging to the defense").

[47] Record at 669-70. *See Byrd*, 60 M.J. at 10 (noting that the witness' inadmissible testimony was not "a focal point of the case," as "during his closing argument to the members, the trial counsel emphasized not [the witness'] interpretation" of the appellant's statements, but the statements "themselves" and the appellant's "testimony about the[m]").

[48] PE 7 at 9.

Finally, the military judge properly instructed the members on the purpose for which they could use the opinion evidence from CDR W.[49] *See Baumann*, 54 M.J. at 105 (C.A.A.F. 2000) (finding no prejudice from erroneous admission of testimony, where military judge properly instructed the members). The appellant also had the opportunity to mitigate any prejudice from the admission of CDR W's opinion by cross-examining him to show "isolated or irrelevant" bases for any "personal hostility" towards the appellant. *Watson*, 669 F.2d at 1382.[50] In fact, the appellant did effectively cross-examine CDR W about his positive evaluation of the appellant's character in a fitness report. Thus, we are convinced that CDR W's opinion testimony, even if admitted in error, did not materially prejudice the appellant.

### III. Conclusion

The findings and sentence, as approved by the CA, are affirmed.

Senior Judge CAMPBELL and Judge JONES concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[49] Record at 660 ("Evidence has been received as to the accused's character for truthfulness. You may consider this evidence in determining the accused's believability.").

[50] S*ee also United States v. Clark*, 12 M.J. 978, 978-80 (A.F.C.M.R. 1982) (finding no prejudice from the admission of a law enforcement officer's opinion evidence that the appellant was untruthful, as "it is seldom reversible error to admit opinion evidence . . . since its foundation is open to cross-examination"); *Woods v. Beavers*, No. 90-3338, 1991 U.S. App. LEXIS 180, at *4, unpublished op. (6th Cir. Jan. 3, 1991) (per curiam) ("The . . . objection ignores the fact that the [witness] could have been and was cross-examined concerning the basis of his opinion. Any risk of unfair prejudice was mitigated by this opportunity to cross-examine.").